# The Commonwealth *ex rel.* The Attorney-General *versus* John N. Conyngham.

1. The Act of April 23d 1866, establishing the Mayor's Court of the city of Scranton, and making the President Judge of the Eleventh Judicial District recorder of the same, is unconstitutional.

2. The office of recorder of the city of Scranton is within the meaning of the judiciary elective clause of the amended Constitution of 1850. The recorder is a judge of a court of record, and ought to be elected.

3. The changing of the name of a judicial officer from that expressly mentioned in the Constitution cannot defeat the constitutional right of the electors to choose him in the manner provided by the judiciary clause of the Constitution.

4. The office of recorder for the Mayor's Court is an office of profit under this Commonwealth, and the judges of other courts are prohibited from holding it by article 5, section 2 of the Constitution.

5. The legislature, in creating a new court within part of the district or county occupied by an old court, cannot legislate upon the bench of the new court the judge of the old court. The judge of the new court must be chosen by the people of his district.

6. The Mayor's Court of Scranton is a court of record, and of an independent judicial district.

March 14th 1870. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. READ, J., at Nisi Prius.

This was a quo warranto to the Hon. John N. Conyngham. The suggestion was filed, December 3d 1869, by the Attorney-General, setting forth that the respondent was exercising the office of Recorder of the Mayor's Court of the city of Scranton, in the county of Luzerne, without lawful authority, and the writ was to show by what warrant he exercised the office.

The answer, admitting that the respondent exercised the office, set forth as follows: That he had been elected and duly commissioned, on the 21st of November 1861, president judge of the 11th Judicial District, composed of the county of Luzerne, for ten years, from the first Monday of December then next; that he then entered upon the duties of that office and has continued to

[Commonwealth v. Conyngham.]

exercise them since; and that the residents of Scranton, being citizens of Luzerne county, voted at the election for president judge in 1861; that by an Act of Assembly, passed April 23d 1866, the inhabitants of certain territorial limits in Luzerne county were constituted "The City of Scranton," which in June following was duly organized, and has since continued to be a municipal corporation; that by the said act, a mayor's court was constituted, to be held by the mayor or recorder and aldermen of the city, for the trial of crimes, &c., and it was provided that the recorder should preside at all jury trials; that certain civil jurisdiction was also conferred upon the court, and proceedings on the civil side might be conducted by the recorder alone; that it was further provided by the act that the president judge of the 11th Judicial District should be recorder of said city. The answer averred that at the time of the organization of the city of Scranton the respondent was president judge of the 11th Judicial District, and was duly sworn to fulfil the duties of recorder of that city, entered upon the office, and has since continued to perform its duties, and claims the right to perform them.

The Commonwealth craved oyer of the Act of April 23d 1866, which was granted.

(The material parts of the act will be found in C. J. Thompson's opinion.)

The Attorney-General demurred to the answer. The causes of demurrer were:—

1. Because the Act of April 23d 1866 is unconstitutional, being repugnant to that part of the 11th section of 5th Article of the Constitution of Pennsylvania, which provides that "The judges of the Supreme Court, of the several Courts of Common Pleas, and of such other courts of record as are or shall be established by law, shall be elected by the qualified electors of the Commonwealth in the manner following, to wit: The judges of the Supreme Court by the qualified electors of the Commonwealth at large; the president judges of the several Courts of Common Pleas, and of such other courts of record as are or shall be established by law, and all other judges required to be learned in the law, by the qualified electors of the respective districts over which they are to preside or act as judges."

2. Because it is not averred that the said respondent was elected to the said office of recorder of the Mayor's Court of Scranton by the qualified electors of the city of Scranton.

3. Because it is not averred that the said respondent was, at the time of his said election to the office of president judge of the 11th Judicial District, or that he since hath been or now is, a resident "within the district" of the city of Scranton.

The case was reargued at Harrisburg, May 5th 1870, before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.

[Commonwealth *v.* Conyngham.]

*W. G. Ward, John Handley,* and *F. Carroll Brewster,* Attorney-General, for Commonwealth.—The Mayor's Court of Scranton is a court of record. The 14th section of the charter (Pamph. L. 1041) provides: "The said mayor, recorder and aldermen, &c., shall hold and keep a court of record within the said city, &c."

Sect. 2 of Art. 5 of the Constitution of Pennsylvania requires that "the president judges of the several Courts of Common Pleas, and of such other courts of record as are or shall be established by law, and all other judges required to be learned in the law (shall be elected) by the qualified electors of the several districts, over which they are to preside or act as judges."

The recorder of the city of Scranton is such an officer as is designated by the term "judge" in the Constitution: Commonwealth *v.* Gamble, 12 P. F. Smith 343.

In the election of president judge in 1861, the citizens of the territory afterwards composing the city of Scranton, could not have chosen a recorder for that city which was not chartered until 1866.

The 4th section of Act of April 4th 1796 empowered the governor "to appoint one recorder" for the city of Philadelphia. By section 1, of the schedule of 1838, that "all laws of this Commonwealth * * * shall continue as if said alterations and amendments had not been made," it was the intention of the convention to leave the appointing power in the governor, who at that period exercised under the Constitution of 1790, the right to fill such vacancies as might happen, in the several "mayors' courts:" Art. 2 Const. 1790, § 8; John *v.* Nicholls, 1 Yeates 182; The Commonwealth *v.* Collins, 8 Watts 335; Id. 340. If the Constitution recognises the office of recorder, he is judge of a court of record, and ought to be elected in the same manner as the president judge: The People *v.* Warner, 7 Hill 82.

The office of president judge and of recorder are two separate and distinct offices; both are judges. Changing the name of a judicial officer cannot defeat the constitutional right of choosing him in the manner provided by the judiciary clause: Reeves *v.* Brown, 4 Penna. L. J. 465; Graham on Jurisdiction 128, § 3; The Commonwealth *v.* McClurg, 5 Penna. L. J. 456; "Judges," Jacob L. Dict., 1 Bouv. L. Dict. 675; 1 Bl. Com. 269; 4 Id. 84, 125; 1 Bac. Abr. 3; Bl. Com. in App. 3, 38–40; 4 Inst. 73, 23, 3; Cooke R. 20; 9 Id. 118; 1 H. Hist. P. C. 231; Gro. C. 146; 1 Bl. Com. 269; 1 Tidd 426; Min. of Conv. 81, 85, 138, 139, 194, 198. *Justice* is used instead of *Judge:* Art. V. § 5; Penna. Const. 6 Vin. Abr. 484; Wheat. Dig. 127; 3 Com. Dig. 300; Id. 386; 2 Bl. Com. Append. iii.; Id. 40; Id. 41; 4 Inst. 73; 1 St. Laws Append. 58; Constitution of 1790 (see art. 5, § 3; Id. § 9).

[Commonwealth v. Conyngham.]

By the Act of 13th April 1791, no judge of any court of record shall practise as an attorney or counsellor: Com. v. Pyle, 6 Harris 521; Com. v. Flanagan, 7 W. & S. 68; Com. v. Green, 8 P. F. Smith 232.

By art. 5, sect. 11, Const., all officers empowered to hold court and act in a judicial capacity are styled judges. "The Mayor's Court of Scranton" is such a court of record as is required by the Constitution of Pennsylvania to have its chief judicial officer elected by the people of the district in which he is to act as judge, and in which he must reside: John v. Nicholls, 2 Dall. 184.

By art. 5, sect. 11, amended Constitution of 1850, an elective judiciary was introduced into Pennsylvania; it did not mean to make a distinction in favor of an executive appointment, and against a proper election of all persons who acted in a judicial capacity: Chief Justice Lewis's Case, 5 Casey 518. The Constitution should be interpreted so as to carry out the great principles of the government. It should receive no technical construction: Com. v. Zephon, 8 W. & S. 386; Lestapies v. Ingraham, 5 Barr 71. The recorder is empowered to examine, hear and punish, in a judicial manner, and is therefore a judge: Groenvelt v. Burwell, 1 Salk. 200; Respublica v. Dallas, 3 Yeates 314; 1 Bac. Abr. 657. The amended Constitution of 1850, art. 5, sect. 2, prevents judges from holding any other "office of profit under this Commonwealth." The office of recorder is an office of profit under this Commonwealth. See Pamph. L. 1866, p. 1046, s. 30, Purd. Dig. p. 1431, pl. 6; Pamph. L. 1866, p. 1046, s. 3. He may be impeached for misbehavior in office: Art. 4, s. 3; Com. v. Sutherland, 3 S. & R. 145; Com. v. Binns, 17 Id. 243; 2 Bouv. L. Dict. 259; 3 Kent Com. 598. The acceptance of two offices incompatible will vacate the first: Milward v. Thacher, 2 T. R. 81, 87; The People v. Carrique, 2 Hill 97; Com. v. Pyle, 6 Harris 520.

The Supreme Court will take judicial notice of who are judges of the subordinate state courts: Hibbs v. Blair, 2 Harris 417; Kilpatrick v. Commonwealth, 7 Casey 198; Com. v. Collins, 8 Watts 331. A law passed intended to take away or unnecessarily postpone and embarrass the right of an election will be set aside as unconstitutional: Commonwealth v. Maxwell, 3 Casey 444.

The schedule to the amendments of 1838 are not a part of the fundamental law of this Commonwealth: Chief Justice Lewis's Case, 5 Casey 518; Com. v. Green, 8 P. F. Smith 231; Com. v. James Clark, 7 W. & S. 133; Com. v. Collins, 8 Watts 348. The Mayor's Court of Scranton is not recognised in the Constitution: In re Penna. Hall, 5 Barr 209.

A. Hand and E. N. Willard, for respondent.—The Commonwealth must make out a clear case of conflict with the Constitu-

tion: Com. *v.* Maxwell, 3 Casey 458; Com. *v.* Zephon, 8 W. & S. 387. The people of Scranton voted for a recorder by voting for him for president judge of the district. There is doubt about the recorder being a judge within the meaning of the Constitution.

Definition of "judge:" Jacob's Law Dic., Tomlin's Dic., Burrell's Dic., Bouvier's Law Dic., Respublica *v.* Dallas, 3 Yeates 300. The recorder is not necessarily "required" to be learned in the law."

The 30th section of the charter of Scranton is not in conflict with the clause of the Constitution requiring that judges shall not hold any other office of profit under this Commonwealth. The recordership is not another office distinct from judge: Com. *v.* Zephon, 8 W. & S. 386; Kilpatrick *v.* Com., 7 Casey 213; Com. *v.* Maxwell, 3 Id. 444; Respublica *v.* Dallas, 3 Yeates 300; Com. *v.* Bacon, 6 S. & R. 322; Shepherd *v.* Com., 1 Id. 1; Com. *v.* McCombs, 6 P. F. Smith 436; In re Pennsylvania Hall, 5 Barr 204. The 30th section of the city charter is not in conflict with the 8th section of the schedule to the amendments of 1838: 2 Smith's Laws 467. Several recorder's courts were in existence at the time the amendments of 1838 were adopted. There being no provision in the Constitution for the appointment of recorders, therefore the legislature may appoint them by act. A recorder is not a judicial officer within the meaning of sect. 8, art. 2, of the Constitution.

The legislature may give a judge jurisdiction over people who have not elected him: Blood *v.* Mercelliott, 3 P. F. Smith 392; Acts of Assembly, Pamph. L. 1867, p. 1529; 1842, p. 166; 1864, p. 829; Moers *v.* The City of Reading, 9 Harris 188; Norris *v.* Clymer, 2 Barr 277; Stuart *v.* Laird, 1 Cranch 299; Com. *v.* Green, 8 P. F. Smith 226.

July 7th 1870. Judgment was entered for the Commonwealth on the demurrer.

The opinion of the court was delivered, October 20th 1870, by
THOMPSON, C. J.—The writ in this case was issued upon the relation of the attorney-general, to test the right of the respondent to exercise the office of the recorder of the Mayor's Court of the city of Scranton, in Luzerne county, under the provisions of an act incorporating said city, passed the 23d of April 1866, and the supplement thereto, of the 30th of March 1867. At our sitting in July last, in the Eastern District, having heard the arguments in the case previously, we entered judgment on the issue made in favor of the Commonwealth, and consequently of *ouster* against the respondent, and reserved to the present time the announcement of our reasons for the judgment so entered, some of which we propose now briefly to state.

By the first of the above-mentioned acts, "the inhabitants

[Commonwealth v. Conyngham.]

embraced and residing within the territorial limits of the township of Providence, the borough of Scranton, the borough of Hyde Park, and the borough of Providence, in the county of Luzerne," is constituted a corporation, by the name and style of the "City of Scranton," and divided into twelve wards. In addition to the usual powers conferred on such municipal corporations, a Mayor's Court is established by this act, to be holden quarterly by the mayor, recorder and aldermen, or any three of them, the mayor or recorder being one, "with full power," says the act, "to hold and keep a *court of record* within said city, four times in each year, to continue one week each," and longer by adjournment, if necessary.

The criminal jurisdiction of this court is, by the act, extended to "all such offences committed or arising within the limits embraced by the city, as are triable in other Courts of Quarter Sessions in the Commonwealth," with the power to forfeit and issue process for the recovery of all recognisances forfeited therein, and "generally," says the act, "to do all such matters and things within the said city, as any Court of Quarter Sessions of the peace, of and for any county within this Commonwealth, may or can do within any such county." Thus there is established, within the city, a Court of Quarter Sessions of general jurisdiction, as fully and clearly as any other court is or can be established within any county of the Commonwealth.

In addition to this general criminal jurisdiction, it is provided in the 15th section of the act as follows :—

"That the Mayor's Court for the city of Scranton shall have original civil jurisdiction to the same extent as is conferred by law upon the Court of Common Pleas of Luzerne county, in all cases where the defendant shall reside within the limits of said city, and also, of all amicable actions where the parties shall, by writing, institute the same in said county, and the remedies, processes, pleadings and costs, shall be similar to like proceedings in the Court of Common Pleas in said county. And the said Mayor's Court shall also have the same chancery powers and jurisdiction, within the said city, as is now by law invested in the Courts of Common Pleas, and shall also have the same power and jurisdiction within the said city, as is now conferred by law upon the Orphans' Court of Luzerne county." Jurisdiction of divorce cases was afterwards conferred by the supplement to the act of incorporation. Power is also given to this court to issue writs of certiorari to judgments of the aldermen of said city, as other Courts of Common Pleas do.

It possesses all the machinery and officers of other courts of record, viz.: a clerk, seal and records, and its judgments are revisable on appeal and writs of error from this court as are the judgments of other courts of general jurisdiction. It is, there-

15 P. F. SMITH—6

[Commonwealth *v.* Conyngham.]

fore, a court of record of general, civil and criminal jurisdiction within its territorial boundaries, beyond a question, and is so expressly declared. Even without this express declaration, it would, from its constitution and powers, be a court of record. Furthermore, the 19th section of the act provides for the removal of all actions, prosecutions and appeals, at the election of the parties, or either of them, from the judgments of justices of the peace pending in the Common Pleas and Quarter Sessions of Luzerne county, having arisen within the limits of the city of Scranton, into the Mayor's Court for determination and the arbitration laws of the Commonwealth are extended to said court. These facts illustrate most clearly what we have already said, that the court in question is a court of record, of general jurisdiction, as well as a municipal court, and it follows that its judges are required by the Constitution of the Commonwealth, to be elected by the qualified electors included in the boundaries of the city, and cannot be designated and appointed by an act of the legislature.

The respondent claimed to hold and exercise the office of recorder of the Mayor's Court thus established, under and by virtue of the *30th section of the act, which* provides "that the president judge of the 11th Judicial District of the Commonwealth, or of that district of which the county of Luzerne shall form a part, shall be the recorder of the said city," and shall receive an annual salary of $500 for his services, payable one-half by the state and the other half by the city. This is the commission relied upon as the authority for exercising the office of recorder of the city by the respondent.

We have shown that the Mayor's Court is not only a municipal court, but a court of general civil and criminal jurisdiction—is in fact a court of an independent judicial district. Now, in such a case, the Constitution expresses itself in no ambiguous terms. It says in sect. 2, art. 6 (Amendment of 1850):—

"The judges of the Supreme Court, of the several Courts of Common Pleas, and of such other courts of record as are or shall be established by law, shall be elected by the qualified electors of the Commonwealth in the manner following, to wit, the judges of the Supreme Court by the qualified electors of the Commonwealth at large; the president judges of the several Courts of Common Pleas, and of such other courts of record as are or shall be established by law, and all other judges required to be learned in the law, by the qualified electors of the respective districts over which they are to preside or *to act as judges.*"

Here is a distinct mandate of the Constitution, requiring the election of the recorder of this court by the people of the district or city, and whatever the Constitution enjoins to be done, in a particular way, amounts to a prohibition of all other modes and

methods of doing the same thing: Page v. Allen, 8 P: F. Smith 338. We have shown this Mayor's Court of Scranton to be a court of record, not only from its nature and necessary inherent powers in view of its jurisdiction, but the express words of the act creating it. The Constitution requires the judges of "such courts of record as are or shall be established by law, and all other judges required to be learned in the law, to be elected by the qualified electors of the respective districts over which they are to preside or to act as judges." That the recorder is a judge, all text-writers who speak of the office affirm. The reference in the argument of the Attorney-General clearly establishes this. In 1 Bac. Abr. 657, it is said that in the Court of Hustings, at Guild Hall, before the lord mayor and sheriffs, "when any matter is to be argued and determined, the recorder sits as a judge, with the mayor and sheriffs, and gives rules and judgments therein." In Respub. v. Dallas, 3 Yeates 300, Shippen, C. J., said: "In the strict legal sense of the word, the recorder is a judge; he is a justice of the peace, and he is a constituent and principal member of a court of record." In a constitutional view, the name is nothing. If it be the recorder's duty to act as a judge of a court, as it certainly is, under this act of incorporation, the Constitution requires that he be elected by the qualified citizens over whom he is to be the judge. In this state the recorders of the mayors' courts have always been appointed from persons learned in the law, and have ever been recognised as judges, with fixed salaries and specified terms of office. The act in question, by indirection, recognises this as a necessary qualification. No one can be recorder, by its terms, who is not the president judge of the Court of Common Pleas of the judicial district, for the time being, in which the county of Luzerne shall be. As such president judge is required by the Constitution to be learned in the law, it follows, that the recorder's office being filled by that incumbent, he will be learned in the law also.

Whether, therefore, we regard this Mayor's Court as within the constitutional category of "such other courts of record as shall be established by law," or that the recorder is to be regarded as a judge, or that he is required to be learned in the law, in either and all of these contingencies he, by the Constitution, must be elected. These requisites all co-exist in the constitution of this court. The provision, therefore, to confer the office of recorder upon the respondent, directly by Act of Assembly, was a clear violation of the constitutional mandate for an election. He could only fill that office by the choice of the people of the city at the polls. Nor would he have been eligible by election to have filled the office, holding, as he did, the office of president judge of the Common Pleas of Luzerne county. Section 2 of art. 5 of the Constitution prohibits judges holding "any other office of profit

[Commonwealth *v.* Conyngham.]

under the Commonwealth" during their continuance in office, and we have seen that a salary is attached to the office of recorder in this case.

But it was contended in argument that the respondent, having been elected president judge of the Common Pleas of Luzerne county, by the electors of the territory embraced by the city of Scranton, in common with the other portions of the county, he was therefore an elected recorder in the sense of the Constitution. This argument concedes the necessity of an election. But how, by one election, he could hold two distinct and independent offices, such as president judge of the Common Pleas and recorder of the Mayor's Court, is not so clear. We think the position totally inadmissible in its application to the question in hand, and needs no argument to refute it. By such a process every township in the county might be included in mayors' courts, and the judicial business, diverted from its legal centre, come to be administered in isolated portions of the county. We should not fully protect and conserve the Constitution of our Commonwealth, as we are bound to do, were we capable of yielding to such suggestions. Nor ought we to be deterred from giving full scope to every of its provisions by appeals to consequences arising from its misinterpretation and consequent violation. Were such considerations to prevail, the instrument in time would disappear altogether by attrition of repeated encroachments, and its very existence become traditionary. But we by no means concede the consequences anticipated and deprecated in the argument of the respondent's counsel. What they may be, is not before us. It is time enough to treat of them when they come before us. In nothing said in this opinion, is it in the least intended to reflect on the learned and able president of the Common Pleas, who acted as recorder of the Mayor's Court of Scranton. That he was mistaken in assuming the discharge of those duties, we believe, but we fully accord to him the utmost conscientiousness in so doing. Thus have we given some of the reasons inducing the entry of judgment in this case in July last; more might be added, but we regard further elaboration unnecessary. We felt ourselves constrained to decide that the respondent was not legally the recorder of the Mayor's Court of the city of Scranton, and entered judgment accordingly.