## Commonwealth *ex rel.* Hite *v.* Swank.

1. By the Act of April 13th 1869, the District Court of Cambria was created, with jurisdiction in *parts* of Cambria county; the prothonotary of the Common Pleas of that county, as clerk of the District Court, to perform the duties and receive the fees of prothonotary, &c. Swank was elected, by voters within the jurisdiction, clerk of that court; in a quo warranto against him, the relator suggested that he had been elected and commissioned prothonotary of the Common Pleas, &c., of Cambria county, without more. *Held,* that the suggestion was insufficient in not averring that, as prothonotary, &c., the relator had the right to perform the duties and receive the fees of clerk of the District Court; but having set out the foundation of his title, that averment might be supplied by amendment; the amendment was allowed by the Supreme Court.

2. Primâ facie the relator had an apparent title to perform the duties and receive the fees of the office of clerk, and it was not necessary that the writ should issue at the suggestion of the attorney-general.

3. The Supreme Court has jurisdiction in all cases of quo warranto, the Common Pleas having concurrent jurisdiction in the cases enumerated in the Act of June 14th 1836; in those cases the Supreme Court may, in their discretion, decline to exercise jurisdiction.

4. The Act of 1869 does not create the office of clerk of the District Court as an independent office.

5. If it were an independent office, the act makes no provision for filling it by election. The defect is not supplied by the 3d section of the 6th article of the constitution, directing that the clerks of the courts, &c., shall be elected by the voters over which the jurisdiction of the court extends.

6. Swank was not lawfully elected to any office created by law; he unlawfully exercised the functions of clerk of the District Court.

7. The Act of 1869 declared that the powers, &c., of the District Court should be exercised by a president learned in the law, and two associates; and that the president and associate judges of Cambria county should be those judges. *Held,* that there is no authority for those judges to hold the court, the organization of the court being unconstitutional.

May 29th 1872. Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Quo warranto from the Supreme Court issued March 28th 1872, by the Commonwealth, upon the suggestion of Josiah K. Hite, against George T. Swank, to answer by what warrant he claimed to have, use and enjoy the rights, franchises and privileges of Clerk of the District Court of Cambria county.

The suggestion set out that the relator was elected prothonotary of the Court of Common Pleas and clerk of the Court of Quarter Sessions of Cambria county, and on the 1st of December 1871 was commissioned by the governor to exercise said offices for three years from that day, but that the respondent had usurped and continued to usurp the said franchises, &c.

The answer in substance was that the respondent was elected clerk of the District Court of Cambria county at the general election in October 1871 by voters within the district over which that court had jurisdiction, and in pursuance of that election was duly commissioned by the governor clerk of that court, for three years from December 1st 1871.

[Commonwealth *v.* Swank.]

By the Act of April 13th 1869, Pamph. L. 894, an additional court of record was established in Cambria county; its jurisdiction extended over the borough of Johnstown and several other boroughs and townships. The act gave the court the powers of the Court of Quarter Sessions of Cambria county, and also civil jurisdiction as specified in it. By the 7th section of the act, there was to be a president judge, learned in the law, and two associates; and a proviso to this section declared that the president of the Twenty-fourth judicial district, of which Cambria county was a part, and the associate judges of that county should be the judges of the District Court. By the 12th section of the act, the prothonotary of the Court of Common Pleas of Cambria county was empowered to perform all the duties of prothonotary and clerk of the Quarter Sessions of the District Court, and in case of his refusal the court should appoint a clerk. There was no provision in the act for electing a clerk within the limits of jurisdiction of the District Court.

The court was organized with the judges mentioned in the act, and the duties of clerk were assumed under the Act of Assembly by Josiah K. Hite, prothonotary of the Court of Common Pleas of Cambria county. A quo warranto was issued against him, and under the principles announced in Commonwealth *v.* Conyngham, 15 P. F. Smith 76, he was ousted.

At the general election in October 1871, Hite was elected prothonotary of the Court of Common Pleas of Cambria county; at the same time the voters within the territorial jurisdiction of the District Court of Cambria county elected the respondent clerk of that court. Both were duly commissioned for the respective offices for which they had been elected.

The respondent moved to quash the writ for the following reasons:—

1. The suggestion does not set forth with legal precision the facts upon which is founded the charge of the alleged usurpation, nor does the writ itself conform to the Act of Assembly.

2. The office of clerk or prothonotary of a court of record is a public one, provided for in the constitution, and his duties are ministerial and judicial; hence the writ can issue only at the suggestion of the attorney-general.

3. If the relator is merely a county officer, the writ should issue from the Court of Common Pleas.

4. The relator was ousted, previously to the last general election, from exercising the duties of the office of clerk of the District Court of Cambria county, therefore he has no status before the court, for he could not succeed to the office in case of judgment of ouster against the respondent.

5. The respondent was duly elected to the office of clerk of the

[Commonwealth *v.* Swank.]

District Court, and has not usurped any franchise, right, or privilege, to which the relator was entitled.

6. The legislature has power to modify the duties of a constitutional office, and take some of them away, as it may change and reorganize the courts, or establish new ones; hence the relator, as an individual, cannot complain, if, in the establishing of the District Court of Cambria county, it has affected the emoluments of his office as prothonotary of the Court of Common Pleas and clerk of the Quarter Sessions.

7. The relator seeks to raise the question of the constitutionality of the Act of Assembly establishing the District Court, which can be done only at the instance of the attorney-general.

*W. D. Moore* and *R. L. Johnson*, for Commonwealth.—The points made by them on the principal question were: 1. That the Act of April 13th 1869 affords no warrant for the respondent holding the office of clerk of the District Court of Cambria county. 2. The act itself is unconstitutional.

*D. McLaughlin*, for respondent.

Mr. Justice AGNEW delivered the opinion of the court, July 3d 1872.

According to the practice recognised by this court, in Murphy *v.* Farmers' Bank, 8 Harris 415, the respondent has moved to quash this writ. Subject to this motion, he also filed his answer to the writ; and the parties have been heard on the motion to quash, and also upon the questions involved in the answer. We shall, therefore, dispose of both matters in one opinion.

In view of the power of amendment, the objection that the suggestion does not set forth the facts with sufficient legal precision is not tenable. The suggestion is defective in the want of an averment of the title of the relator to exercise the duties and receive the fees of the clerk of the District Court of Cambria county. But the relator has set forth the source of his title, by stating his election and commission as prothonotary of the Court of Common Pleas of Cambria county and clerk of the Court of Quarter Sessions. He ought then to have averred that the Act of 13th April 1869, creating the District Court of Cambria county, conferred upon him as such prothonotary and clerk the right to perform the duties and receive the fees appertaining to the clerk of the District Court. But having set forth the foundation of his title, the averment may be supplied by amendment, which we now permit to be made. The case of The Commonwealth *v.* Commercial Bank, 4 Casey 373, is a direct authority on this point.

The objection that the writ can issue only at the suggestion of the attorney-general, and not of a private relator, is not sustained.

[Commonwealth v. Swank.]

This would be true according to The Commonwealth v. Cluley, 6 P. F. Smith 270, and the cases cited on p. 272, had the relator here shown no private interest in himself. But primâ facie, he has an interest to oust the defendant in the apparent title conferred upon him by the act, to perform the duties and receive the fees of the office. Whether he or any one else has a truly valid title to the office of clerk of the District Court, is not a question upon this motion to quash, there being a primâ facie title in the relator.

The objection that this writ should have been issued out of the Court of Common Pleas, is not tenable. Whether the relator is a county officer or not, is immaterial, this court having jurisdiction in all cases, and the Common Pleas having only concurrent jurisdiction in the cases enumerated in the Act of 14th June 1836. We may in our discretion, and sometimes do decline to entertain *original* jurisdiction, and leave it to be exercised by the Common Pleas in the cases over which their jurisdiction extends. We do not think it would be proper to decline it in this case.

The ouster of the relator from the office of clerk of the District Court of Cambria county by a former proceeding, is answered by his subsequent election as prothonotary and clerk of the courts of Cambria county. It may eventually appear that neither he nor the respondent has a valid title to that office; but on the motion to quash, his primâ facie title is sufficient to maintain the suggestion.

The motion to quash is refused, and this brings us to consider the merits of the answer.

That the respondent has no title to the office of clerk of the District Court of Cambria county, and is exercising the functions of such alleged office unlawfully, are entirely clear to our minds. In point of fact, the Act of 1869 does not create the office of clerk of the District Court as an independent office or post. It merely directs that the duties appertaining to the clerkship of the District Court shall be performed by the prothonotary of the Court of Common Pleas and clerk of the Quarter Sessions of Cambria county. This is its whole effect. But were the office an independent and existing one, under the terms of the law, no provision has been made for filling it by election. It is contended that this defect in the law is supplied by the third section of the sixth article of the constitution, directing that prothonotaries and clerks of the several courts, recorders of deeds and registers of wills, shall, at the times and places of election of representatives, be elected by the qualified electors in each county, or the districts over which the jurisdiction of the courts extend, and shall be commissioned by the governor. They shall hold their offices three years, if they shall so long behave themselves well, and until their successors be duly qualified. These provisions are fundamental and undoubtedly govern all prothonotaries and clerks of courts, whose offices are established by the legislature under the last clause of the first

section of the fifth article. But they do not supply the place of the legislation necessary to provide for the election of a person to fill the particular office thus established. They do not ascertain the year in which he shall be elected, the notice to the electors to elect the persons to hold the elections, and make the return, and the time, place and manner of declaring the result and certifying it to the governor. In short, the act is totally wanting in any provision for the election of the officer, and the time when his term shall begin. For aught to be found in the law, the sheriff might have deferred his proclamation until 1872, or the electors, or a majority, might have waited till a later period. It is clear, therefore, that the respondent has not been lawfully elected to any office created by law, and that he is unlawfully exercising the functions of clerk of the District Court, and must be ousted therefrom.

In order to prevent the disastrous consequences resulting from the acts of an unauthorized tribunal, it is proper we should also add that we see no authority to hold this court by any judges having lawful commissions; and that without further legislation of the most careful and thorough kind, the Act of 1869 cannot be carried into effect. Some of its provisions, blending the action of the District Court and the Court of Common Pleas, are objectionable, but we do not refer to such. The fundamental error of the legislation is in the organization of the court itself, which is *not only* unconstitutional, as decided in the case of The Commonwealth *v.* Conyngham, 15 P. F. Smith 76, but is wanting in any provision to correct the error. Had the proviso, that the court should be composed of the judges of the Common Pleas, not been inserted in the 7th section to qualify the enactment, it might have been argued, that there was an inchoate organization of the court by vesting its powers and jurisdictions in a president and two associates, to be supplied in some other manner. There might then be some plausibility in the idea that the places could be filled by appointment, until an election to fill the vacancy. But even this thought is neutralized by the fact that no provision has been made for an election, under the constitutional amendment of 1850. The appointment would fall in December, or we should have the anomaly of the office of a judge of a court of record existing by appointment indefinitely and without any term in the incumbent known to the constitution. It is evident that when, by the proviso, the legislature directed that the court should be organized by the president and associate judges of the courts of Cambria county, it excluded all others from the office. The proviso, it is true, is not according to the constitution, and the judges of the courts of Cambria county cannot fill the office, but its effect was to qualify the enactment so that no others could fill it without further legislation ; no substitute having been provided. The court, not being one of those created by the constitution itself, has nothing to stand

[Commonwealth v. Swank.]

upon except the law which created it, and this being defective in its vital point, it is left without any legal organization. Nothing short of supplementary legislation can cure this defect. It is to be regretted that the legislature had not acted on the suggestion of the governor, and repealed the Act of 1869.

It is proper we should now say before closing, that in a case like this, requiring the immediate interposition of the court, where no independent office exists, and no provision for filling it by election has been made, and especially in view of the unorganized condition of the court itself, we will not go beyond the primâ facie right of the relator to make the suggestion, but will proceed to give judgment against the respondent at once, and stop here. We shall not give judgment for the relator except for costs.

And now, July 3d 1872, the court do find the respondent, George T. Swank, Esq., guilty of unlawfully holding the place and exercising the powers and functions of clerk of the District Court of Cambria county, and do, therefore, give judgment, that the said George T. Swank be ousted and altogether excluded therefrom, and from the exercise of said powers and performance of said functions; and that the said J. K. Hite, the relator, do recover his costs from the said George T. Swank.