# Commonwealth *ex rel.* Attorney-General *versus* Potts.

1. The provision in the 7th section of the Act of April 12th 1869 (creating the District Court of Cambria County), that the President Judge, &c., of the Twenty-fourth District should be judges of that court, qualified the section so that no other than the judges of Cambria county could fill the offices.

2. The Act of 1869 was not to create a new court independent of the existing judicial organization, but to add another such organization for portions of the county, to occupy an auxiliary and subordinate position.

3. Although the proviso was not effectual because of its unconstitutionality, it could not be stricken out in interpreting the section.

October 7th 1873. At Pittsburg. Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Quo Warranto from the Supreme Court, issued May 12th 1873, by the Commonwealth, upon the suggestion of the Attorney-General, against James Potts, that the respondent unlawfully was exercising and claimed to exercise the office of President Judge of the District Court of Cambria; the writ called on him to show by what authority he claimed to exercise the office.

The respondent answered, that he claimed to exercise the office by virtue of an election of the qualified electors of the district over which the said District Court had jurisdiction, and a commission from the governor to hold the office for ten years from the 1st day of December 1871; that he took the oath, &c., and entered upon the duties of the office of president judge aforesaid, and continued since to perform the duties of said office by virtue of the said election and commission. He further answered that the Act of April 13th 1869 established a court of record, to hold its sessions in the borough of Johnstown, to be called the District Court of Cambria, and conferred civil and criminal jurisdiction over the borough of Johnstown (and other boroughs and townships specified in the act), that the act established an independent judicial district in those portions of the county, with the necessary officers and powers, &c., for trial of causes as other courts.

The answer then set out other powers conferred by the act upon the court. The respondent further answered that by the act the president judge of the 24th judicial district was made president judge of the District Court; that by a quo warranto issued out of the Supreme Court, Judge Taylor, who was then president judge of that judicial district, was ousted from the office of president judge of the District Court. By Judge Taylor's removal a vacancy was created, which was filled by the appointment of the respondent by the governor; the vacancy having occurred more than three months before the general election, the sheriff of Cambria county issued his proclamation to the qualified electors of the district over which the District Court had jurisdiction, to meet at their respective voting places to elect a president judge of that

[Commonwealth v. Potts.]

court; that the respondent was then elected president judge of said court, and duly commissioned to that office for ten years.

The respondent then set out the Acts of Assembly under which judges were elected and vacancies filled, and averred that he had been elected and commissioned in accordance with the Constitution and the various Acts of Assembly relating to that subject.

The Attorney-General demurred to the answer, and the respondent joined in demurrer.

*L. D. Gilbert*, Deputy Attorney-General, and *Dimmick*, Attorney-General, for Commonwealth, cited: The Commonwealth v. Swank, *antea*, p. 154.—When part of a statute is unconstitutional, that which is constitutional can have effect only when enough remains to be *intelligibly* acted upon: Clark v. Ellis, 2 Blackf. 8; Campbell v. Bank, 8 Howard (Miss.) 625; Robison v. Bidwell, 22 Cal. 379; McCready v. Sexton, 29 Iowa 356; Lathrop v. Mills, 19 Cal. 513; Sants v. State of Iowa, 2 Iowa 165; People v. Hill, 7 Cal. 97; State v. Commissioners, 5 Ohio 497; Commonwealth v. Clapp, 5 Gray 97; Slawson v. City of Racine, 13 Wis. 398. Where a law is plain and unambiguous, whether expressed in general or limited terms, there is no room for construction, and a resort to extrinsic facts is not permitted to ascertain its meaning: Bartlett v. Morris, 9 Porter (Ala.) 266; 3 Blatch. C. C. R. 325. Where several acts upon the same general subject are *inconsistent or doubtful in meaning*, they should be examined together, and the probable intent of the legislature, as ascertained from the acts in their connection and from the attending circumstances, should be carried into effect: Le Roy v. Chalotta, 2 Abb. (U. S.) 448; State v. Stewart, 47 Mo. 382. Where there is an apparent conflict but no *direct inconsistency* between statutes relating to the same subject, they should be regarded *in pari materia* and as one statute, so as to give them such an exposition as will sustain what appears to have been the main intent of the law-makers: Board of Commissioners v. Cutler, 6 Ind. 354. Even the title and preamble of a statute will not be referred to as explanatory of it where there is no ambiguity as to its intent in the statute itself: Eastman v. McAlpine, 1 Kelly 157; Comparison of statutes can be made only when the statutes are in *pari materia;* Church v. Crocker, 3 Mass. 17, 21; Thayer v. Dudley, Id. 296; Holland v. Makepeace, 8 Id. 418; Holbrook v. Holbrook, 1 Pick. 248; Mendon v. Worcester, 10 Id. 235; State v. Baldwin, 2 Bailey 541. Where the parts of a statute are so materially connected and dependent as to warrant a belief that the legislature intended them as a whole, and that if all could not be carried into effect the legislature would not pass the residue independently, if some parts are unconstitutional and void, all the provisions which are thus dependent are void, &c.: Warren v. Charlestown, 2 Gray 84;

[Commonwealth *v.* Potts.]

Hitchings *v.* ———, 5 Id. 482; State *v.* Commissioners, 5 Ohio 497; Reed *v.* Omnibus Railroad Co., 33 Cal. 212; Lathrop *v.* Mills, 19 Id. 513; Slawson *v.* Racine, 13 Wis. 398. A statute should be interpreted so as to act prospectively and not retrospectively, unless the language is so clear as to preclude all questions as to the intention of the legislature: Neff's Appeal, 9 Harris 243; Steckel's Appeal, 14 P. F. Smith 493; Becker's Appeal, 3 Casey 52.

*J. Scott* and *H. D. Foster*, for respondent.—A statute may be unconstitutional as to one part and valid as to the residue: Clark *v.* Ellis, 2 Blackf. 8. A constitution is paramount to the power of a legislature, and every act of the legislature repugnant to it is absolutely void: Vanhorne *v.* Dorrance, 2 Dall. 308. If an act repealing a former act be decided by a court to be unconstitutional and void, the former act remains in full force and virtue: Commonwealth *v.* Mann, 5 W. & S. 403. Can the rights and powers of a judge de facto, with color of title, be questioned in any form, except by quo warranto at the suit of the Commonwealth? Clark *v.* Commonwealth, 5 Casey 129. In answer to the writ the existence of the vacancy is explicitly averred and relied upon and is admitted by the demurrer. The Commonwealth is therefore estopped from denying the vacancy: Commonwealth *v.* Primrose, 2 W. & S. 407. If, then, there was a vacancy, the Act of the 27th of April 1852, Pamph. L. 465, 1 Br. Purd. 817, pl. 11, makes provision for filling it: Commonwealth *v.* Maxwell, 3 Casey 444.

Mr. Justice AGNEW delivered the opinion of the court, October 20th 1873.

It is true this case is not ruled absolutely by that of The Commonwealth *v.* George T. Swank, decided in Harrisburg in 1872, *antea*, p. 154, the respondent now not then being a party, yet the ground on which his claim rests to the office of President Judge of the District Court of Cambria county was fully considered. The opinion then expressed was rendered necessary to prevent ruinous litigation and uncertainty in the administration of justice within the district, and cannot be treated as a mere *obiter dictum*, or a thing said by the way.

It is unnecessary to repeat all we said of the unauthorized character of the court, as organized by the Act of April 13th 1869, P. L. 894. The pith of the opinion in this respect is contained in the following sentences: "It is evident that when, by the proviso, the legislature directed the court should be organized by the President and Associate Judges of the courts of Cambria county, it excluded all others from the office. The proviso, it is true, is not according to the Constitution, and the judges of the courts of Cambria county cannot fill the offices, but its effect was

to qualify the enactment, so that no others could fill it without further legislation ; no substitute having been provided, the court, not being one of those created by the Constitution itself, has nothing to stand upon except the law which created it, and this being defective in its vital part, it is left without any legal organization."

It is now contended that the legislature, having created a court, and the proviso to the 7th section, making the judges of Cambria county its judges, being unconstitutional and void, the court remained in existence, and its president and associates must be chosen under the Constitution and laws of the Commonwealth. This, however, is simply a denial of what we have said, to wit, that the effect of the proviso was to qualify the section, so that no others than the judges of Cambria county could fill the offices. The question is one of interpretation merely, and we adhere to our former opinion, notwithstanding the able and earnest arguments of the counsel of Mr. Potts. The whole law evidences that it was not the intention of the legislature to create a new court, wholly independent of the judicial organization already existing in the county of Cambria. The purpose, though a very mistaken one, was to add to the existing judicial organization another for a portion of the county, composed of the same judges and officers, which should occupy an auxiliary and subordinate position.

The first six sections establish the court, define its powers, but no where fix the number of judges, declare their grades, or provide for an election at any time or place. The seventh is the first section to declare the organization of the court and determine who and how many judges there shall be, and it declares they shall be the president and associates of the courts of Cambria county. The fact that this declaration is put into the form of a proviso is not any less declaratory of the legislative intent. This intent is maintained in the subsequent parts of the act. The sixteenth section directs that the president shall receive, *in addition to his present salary*, five hundred dollars and mileage, and the associates shall receive *in addition to their present salaries*, two hundred dollars and mileage. The eighteenth section further makes it the duty of the same judges to lease a suitable building in Johnstown for a court room and offices. In connection with these we discover further evidence of the legislative idea and intent in the provisions making the prothonotary of the Common Pleas the clerk of the District Court, and requiring it to be attended by the district attorney and sheriff. Additional evidence of the parasitical type of the court is the provision that its judgments shall not be liens on real estate until transferred to the Common Pleas—that no real estate shall be sold under its executions, and that but one general lien and execution docket shall be kept, as already provided by law, to wit, that of the Common Pleas. All these provisions are heightened in their effect by the entire absence of any other

[Commonwealth *v.* Potts.]

provision for organization by election or otherwise. The respondent sets forth an election as judge of the District Court at the general election of the year 1871, as his title to the office. But it is very evident there was no authority for this, if our interpretation of the act be true—that the proviso so qualified the enactment, that none but the judges provided in it can hold the offices. Though the proviso may not be effectuated because of its unconstitutionality, it cannot be stricken out in giving the interpretation to the section. The section speaks as an entirety in its purpose, and not in parts, which may be severed without violence to the legislative purpose. Where, as here, the parts are so dependent that one cannot take effect without the other, so as to carry out the legislative intent, we cannot legislate by way of substitution. The answer of the respondent is objectionable as being argumentative to a great degree. But the facts set forth in it are covered by the demurrer of the Commonwealth and can be readily separated from the argumentative portions. As these facts do not constitute a sufficient title to the office of President Judge of the District Court of Cambria county, we must give judgment on the demurrer against the respondent.

And now, October 20th 1873, this cause having been duly heard and considered by the court, it is ordered that judgment of ouster be rendered for the Commonwealth, and against the defendant, and it is hereby considered and adjudged that James Potts, the respondent, unlawfully holds and exercises the office of President Judge of the District Court of Cambria county, and he is hereby excluded and ousted therefrom, and it is further adjudged that the Commonwealth do recover her lawful costs from the said James Potts.