# Mansfield's Case.

*Constitutional law—Courts—Creation of courts—Juvenile court—Act of May* 21, 1901, *P. L.* 279.

The legislature in creating a new court within the district occupied by an old one cannot legislate upon the bench of the new court, the judge of the old court. The judge of the new court must be chosen by the people of his district.

*Criminal law—Juvenile court—Petition—Absence of affidavit—Act of May* 21, 1901.

A petition under the juvenile court act, not verified by affidavit, is insufficient to give the court jurisdiction even to issue a summons, and this defect is fatal to all subsequent proceedings.

*Constitutional law—Title of statute—Juvenile court act—Act of May* 21, 1901 *—Classification—Trial by jury—Fourteenth amendment.*

The act of May 21, 1901, a portion of the title of which is as follows: " An act to regulate the treatment and control of dependent, neglected and delinquent children under the age of sixteen years ; providing for the establishment of juvenile courts, and regulating the practice before such courts," is insufficient in title, because (1) the title contains no intimation that it was the purpose of the act to deal with the treatment and control of all children, but only of dependent, neglected and delinquent ; (2) that the title contains no intimation that the legislation changes the whole course of judicial procedure as to delinquent children, in criminal proceedings and actions for penalties, nor that it changes the punishment or penalty of

every offense, arising at common law, or created by statute or municipal ordinance.

The juvenile court act and its classification of citizens over sixteen years of age and all those under that age who are inmates of institutions, etc., as one class, and all other children under sixteen years of age as a second class, violates the provisions of article 3, section 7 of the constitution, which forbids the passage of any special law regulating practice and jurisdiction in judicial proceedings or granting to any individual any special or exclusive privilege or immunity.

The juvenile court act also violates section 10, article 1 of the bill of rights which declares that " no person shall, for any indictable offense, be proceeded against criminally by information,",and section 9 which declares that the accused shall have " in prosecution by indictment or information, a speedy public trial by an impartial jury of the vicinage " and section 6 which declares that " trial by jury shall be as heretofore, and the right thereof remain inviolate."

While the offense remains indictable and persons who are sui juris are, without any action on their part, secure in the right of a jury trial, an act of assembly which requires that a boy fourteen years of age shall make a formal affirmative demand in order to secure a jury trial when charged with such an offense is such a clog upon the right as to involve a violation of the constitutional guaranty.

It seems that it is a grave question whether the juvenile court act does not come into conflict with the fourteenth amendment to the constitution of the United States, which took away from any state the power to " deny to any person within its jurisdiction the equal protection of the laws."

Argued Oct. 7, 1902.   Appeal, No. 96, Oct. T., 1902, by J. Clark Mansfield, from order of Juvenile Court, Phila. Co., committing Fred Mansfield to the House of Refuge.   Before Rice, P. J., Beaver, Orlady, W. W. Porter and W. D. Porter, JJ.   Reversed.

Petition to commit a minor to the House of Refuge.

The case turned upon the constitutionality of the juvenile court Act of May 21, 1901, P. L. 279, entitled " An act to regulate the treatment and control of dependent, neglected and delinquent children, under the age of sixteen years ; providing for the establishment of juvenile courts ; regulating the practice before such courts ; providing for the appointment of probation officers ; prohibiting the commitment to jail or police station of a child under fourteen years of age ; providing for the appointment, compensation and duties of agents of juvenile reformatories ; imposing certain duties upon the board of pub-

lic charities of this state; regulating the incorporation of associations for the care of dependent, neglected or delinquent children; prohibiting foreign associations from placing children in homes in this state for adoption, or under indenture, except under certain conditions; providing for the appointment of a board of visitors, and repealing acts and parts of acts inconsistent with the provisions of this act."

*Errors assigned* were as follows:

1. The court before which the defendant appeared is an unconstitutional body and without jurisdiction.

2. The court before which the defendant appeared erred in not allowing the defendant his constitutional right of trial by jury.

3. The court before which the defendant appeared erred in not trying the defendant by indictment according to law.

4. The court erred in sentencing the defendant when the record shows that he was not brought into said court by due process of law.

5. The court erred in applying the provisions of an unconstitutional act, both in hearing and punishing the defendant.

*John H. Fow*, for appellant.—The title must express the subject of the proposed legislation so clearly and fully as to give notice of the legislative purpose: In re Road in Phœnixville, 109 Pa. 44; Dorsey's App., 72 Pa. 192; Union Pass. Ry. Co.'s App., 81* Pa. 91.

A perusal of the act of May 21, 1901, shows that some of the subject-matters contained therein are not germane to the enacting clause covering the subject intended by the legislature to be the real subject thereof. "Nor can the enacting clause be modified to give the act effect:" Com. v. Moorhead, 7 Pa. C. C. Rep. 513; Com. v. Ickhoff, 33 Pa. 80.

And when this act confines the designation of the appointment of a judge of the juvenile court to the judges of the oyer and terminer and general jail delivery and the courts of quarter sessions of the peace of this state, it does so in conflict with the limitation upon the original jurisdiction vested by section 3 of article 5 of the constitution of the Supreme Court.

It also violates section 26 of article 5 of the constitution of this commonwealth in providing a separate court for a class of persons and to exercise that jurisdiction which is now vested by law in the judges of oyer and terminer and courts of quarter sessions who are designated as judges of such courts, a power vested by the constitution in the judges of common pleas: Com. v. Conyngham, 65 Pa. 76; Com. v. Potts, 79 Pa. 164.

The constitution is paramount to the power of the legislature, and every act of the legislature repugnant to it is absolutely void: Vanhorne v. Dorrance, 2 Dall. 304.

This juvenile court not being one created by the constitution, it has nothing to stand upon, except the law which created it, and this being defective in its vital parts, its acts must necessarily be void and of no effect: Com. v. Potts, 79 Pa. 164.

The act takes away trial by jury: Trimble's App., 6 W. 133; Com. v. Shaw, 1 Pitts. 492.

Waiver by consent in a criminal case is a nullity: Doebler v. Commonwealth, 3 S. & R. 237.

The legislature cannot constitutionally impose any provisions restrictive of the right of trial by jury: State v. Carman, 63 Iowa, 130 (18 N. W. Repr. 691).

The legislature has no constitutional right to classify and separate persons of the same age for the purpose of punishment.

A usurpation of prohibited power by the legislature will justify the courts in declaring an act unconstitutional: Speer v. School Directors, 50 Pa. 150; Hilbish v. Catherman, 64 Pa. 154; Penna. R. R. Co. v. Riblet, 66 Pa. 164; Com. ex rel. Wolfe v. Butler, 11 W. N. C. 241.

*N. Dubois Miller*, for House of Refuge.—The determination of the custody and control of minors rests absolutely in the discretion of the courts of the commonwealth and is not dependent upon the ascertainment of facts by the aid of trial by jury, unless the proceeding is based upon a distinct criminal charge: Ex parte Crouse, 4 Wharton, 9.

The whole body of the statute law relating to children in the state of Pennsylvania recognizes that the care and custody of children is dependent upon either the character of the child

or that of its natural friends or protectors. Nor is the state of Pennsylvania alone in this view of its duty to infants. In most of the eastern states similar legislation exists and in several where the question of the constitutionality of such legislation has been raised, the acts have been declared constitutional: Prescott v. State, 19 Ohio, 184; Roth v. House of Refuge, 31 Md. 329; Wares's Petition, 161 Mass. 70 (36 N. E. Repr. 586); Milwaukee Industrial School v. Supervisors of Milwaukee Co., 40 Wis. 328; Rebhun's Case, Brightly's Purd. Dig. 999.

*R. C. Dale*, for citizens interested in sustaining the constitutionality of the act of May 21, 1901.

OPINION BY W. D. PORTER, J., February 11, 1903 :

This proceeding purports to have been commenced and carried on in the court of oyer and terminer and general jail delivery and the court of quarter sessions of the peace, in the juvenile court of the county of Philadelphia. The act of May 21, 1901, P. L. 279, attempted to confer upon the courts of oyer and terminer and general jail delivery, and the courts of quarter sessions of the peace of the several counties, concurrent jurisdiction of all cases arising under that statute, but even that piece of legislation did not attempt to wipe out the distinction between these common-law and constitutional courts and blend them into one tribunal. The title of the act indicated a legislative intent to establish juvenile courts, but the effect of the body of the legislation is to extend the jurisdiction of the court of oyer and terminer and the court of quarter sessions, and to regulate the exercise of that jurisdiction. Any purpose which the legislature may have had to create a new court independent of the existing judicial organizations, or even one of a parasitical type, dependent upon the constitutional tribunals for the execution of its decrees, must have failed because of the manner in which the judges who were to exercise the jurisdiction of such new court were to be chosen. The judges of the courts of oyer and terminer and of the courts of quarter sessions of the peace of the several judicial districts are required to designate one or more of their number to hear all cases coming under this statute. The legislature in creating a

new court within the district occupied by an old one cannot legislate upon the bench of the new court the judge of the old court. The judge of the new court must be chosen by the people of his district: Commonwealth v. Conyngham, 65 Pa. 76. The provision for the appointment of the judges would not have been effectual for the organization of a new court because of its unconstitutionality, but it could not have been stricken out in interpreting the statute and no judge could have been elected to complete the organization of a new tribunal: Commonwealth v. Swank, 79 Pa. 154; Commonwealth v. Potts, 79 Pa. 164. The provision of the statute that "the court may for convenience be called the juvenile court," might afford the public a convenient means of designating the proceedings arising under this act, but it could not have the effect of changing the style or title of the constitutional courts of the commonwealth.

The act in question is the only foundation for the jurisdiction exercised by the court below, and the only allegation of authority for the arrest, trial and commitment of this defendant is based upon the 4th section of the statute, which provides that the jurisdiction may be invoked by filing "with the clerk of the court having jurisdiction in the matter, a petition in writing, setting forth facts verified by affidavit." A petition was presented to the court below setting forth that this defendant, a boy of about the age of fourteen years, was a delinquent person in this: "That he broke into a store at No. 1432 Susquehanna avenue and stole $6.76 out of the cash drawer." This petition was signed by the Children's Aid Society, whether an incorporated society or not does not appear, but it does appear that the petition was not verified by affidavit. This was a palpable disregard of the express provisions of the very statute which was supposed to confer jurisdiction upon the court. There being no petition verified by affidavit, the court was without jurisdiction to even issue a summons, under the provision of the statute, and this defect is fatal to the whole proceeding. We might rest our decision here, but because of the number of cases which must arise under the act of 1901, and the importance to the public of a prompt disposition of the question, we pass to the consideration of the validity of that statute.

The title of the act is long and complex, but the only part of it which is material to the consideration of the question here presented is the first sentence in these words : " An act to regulate the treatment and control of dependent, neglected and delinquent children, under the age of sixteen years ; providing for the establishment of juvenile courts, and regulating the practice before such courts." This title contained no intimation that it was the purpose of the act to deal with the treatment and control of all children, and the natural and inevitable conclusion of one who read the title was that the descriptive words were intended to limit and define the classes of children with which the legislation dealt. All children may be said to be dependent in the sense that they are the objects of the care of their parents, but the word could not have that signification here, for it was manifestly used as one of limitation. The term "dependent and neglected children," as here used, unmistakably suggests children who are neglected by their natural protectors and dependent upon the public for the supply of the necessaries of life. The title of an act must suggest its own meaning, and cannot by any definition in the body of the legislation be extended to include what its own words do not imply. When in defining the terms "dependent child " and " neglected child," in the 1st section of the act, it was attempted to make them include more than such terms ordinarily suggest and make certain specific acts by the child, having no relation to the manner in which the parent took care of his offspring, such as singing, or playing a musical instrument upon the street, to bring the child within the meaning of the term " dependent," this expanded the legislation beyond the limits indicated by the title. Under the provisions of this statute, if it is valid, a boy who plays a jew's-harp or mouth organ upon the public street becomes a dependent child, subject to the jurisdiction of the so-called juvenile court and may, until he is twenty-one years of age, be consigned to the care of some charitable person or institution. Such charitable individual or institution would become the guardian of his person, and might, without consulting either parent or child, consent to the adoption of the latter by a stranger to his blood. The right of parents to rear, care for and protect their children is natural, but it is not excepted by the declaration of rights out

of the subjects of ordinary legislation. The legislature might, in a constitutional manner, enact a law which would take every child in the commonwealth from the protecting care of its parents: Ex parte Crouse, 4 Wharton, 9. The existence of this power is not to be questioned; the abuse of it would lead to prompt constitutional restriction. While the right of parents to the custody of their children is not indefeasible, the legislation which limits it or takes it away must comply with the requirements of the constitution. The provisions of the act of 1901, in relation to dependent and neglected children, went far beyond anything that could reasonably have been inferred from the title, and the legislation was to that extent invalid: Dorsey's Appeal, 72 Pa. 192; Union Passenger Railway Company's Appeal, 81* Pa. 91; Road in Phœnixville, 109 Pa. 44.

When we come to consider the act in its relation to the provision with regard to delinquent children, the violation of article 3, section 3, of the constitution: " No bill, except general appropriation bills, shall be passed containing more than one subject which shall be clearly expressed in its title " is manifest. The title of the act, as applied to these· provisions, is " An act to regulate the treatment and control of delinquent children." This would indicate a purpose to deal with the treatment and control of children who have failed to perform some positive duty. It might refer to the manner in which parents or others to whom the duty was owing should enforce performance or be permitted to punish the failure. This title conveys not even the most remote intimation that the legislation changes the whole course of judicial procedure in criminal proceedings and actions for penalties, in all the courts of the commonwealth, whether of record or not of record; nor that it changes the punishment or penalty of every offense, arising at common law or created by statute or municipal ordinance; yet this is what the act proposes to do.

The 1st section enacts that " the words 'delinquent child' shall include any child under the age of sixteen years, who violates any law of this state, or any city or borough ordinance." The 2d section confers upon the courts of oyer and terminer and general jail delivery, and the courts of quarter sessions of the peace, original jurisdiction in all cases coming within the terms of this act. The 10th section provides that when " a

delinquent child under the age of sixteen years is arrested, with or without warrant, such child may, instead of being taken before a justice of the peace or police magistrate be taken directly before such (juvenile) court; or, if the child is taken before a justice of the peace or police magistrate, it shall be the duty of such justice of the peace or police magistrate to transfer the case to such court. . . . And in such case the court may proceed to hear and dispose of the case in the same manner as if the child had been brought before the court upon petition, as herein provided." The 4th section provides for the inception of the prosecution by the filing of a petition and affidavit in the court. These provisions leave no doubt that it was the legislative intention to forbid the prosecution of any "delinquent" child for the violation of any law of the state or any city or borough ordinance in any forum other than the juvenile court, and in any manner other than that provided by this act. The inferior tribunals in which preliminary hearings in all criminal cases are required by law to be held, are in the cases coming under this act prohibited from proceeding to a hearing, the cases must be transferred to the juvenile court. The 5th section provides for the issuance of summons or warrant, and, after the child and its parent or guardian have been brought in for the trial, then comes this novel and drastic provision : " On the return of the summons or other process, or as soon thereafter as may be, the court shall proceed to hear and dispose of the case in a summary manner." The 2d section contains a provision that in all trials under the act any person interested therein may demand a jury trial. The 3d section after regulating the manner in which trials shall be held and the manner in which a jury, in case one is demanded, shall be drawn, enacts : " And provided, further, that in all cases of riot, conspiracy and the like, where two or more persons are charged with the commission of the joint offense, and one or more of the persons so charged shall be under the age of sixteen, it shall not be necessary to hold the trial of such case or cases in the said juvenile court, but the trial of such offender shall be conducted as heretofore, anything in this act to the contrary notwithstanding." That it was the legislative intention that the trial of delinquents under this act should be a trial of the accused for a specific offense, is by this provision removed from the realm of

doubt. When the offense was necessarily joint, and one of the offenders did not come within the provisions of the statute, then all were to be tried under previously existing laws, but for all other offenses those coming under the provisions of the act must be tried according to its terms, in the juvenile court. It has been argued that those coming within the operation of the act may still be prosecuted and punished for criminal offenses in the ordinary manner, and that the provisions of this statute for the treatment and control of a delinquent are only to come into operation after the criminal statutes have been satisfied. The reply to this is that such was not the legislative intention. In so far as this statute regulates criminal procedure, the title is positively misleading, and all the provisions which relate to delinquent children must fall.

The substance of the act, even if the title were sufficient, violates the fundamental law. The opening sentence of the enactment proclaims that " this act shall only apply to children under the age of sixteen years, not now or hereafter inmates of a state institution or any training school for boys or industrial school for girls, or some institution incorporated under the laws of this state." The effect of this when considered in connection with the provisions with regard to delinquent children, is to divide the citizens of the state into two classes for the purposes of criminal procedure. The first class embraces all citizens over sixteen years of age and all those under that age who are inmates of a state institution, or training school for boys or industrial school for girls or some other institution incorporated under the laws of this state, which would include all asylums, schools and other public and private institutions controlled by any incorporated society; the second class includes all other children under sixteen years of age. When carried into effect novel results would ensue. Three boys, one sixteen years of age, the second fifteen years old, being an inmate of some institution incorporated under the laws of the state, and the third fifteen years of age, but living at home with his parents, commit the crime of murder; they are all above the age when the law, which in this respect has not been changed by this act, presumes responsibility for crime; they are entitled to separate trials; if this statute can be sustained, then two of them must be tried in the court of oyer and terminer and pun-

ished according to pre-existing laws, but the third must be tried in the juvenile court and his case disposed of under the provisions of this statute.   If the same boys sell newspapers on Sunday in violation of the act of assembly, or play ball upon the public street, in contravention of a municipal ordinance, the first two would be tried before a justice of the peace and escape with a small fine ; the third would go to the juvenile court and remain under the control of the judges of that tribunal until he was twenty-one years of age, they having the power to confine him in the house of refuge or some other institution during that period, and, in the meantime, under the authority of this statute, he might be legally adopted by some stranger, without the consent of the boy or any person of his blood.   We must hold that this classification for the purpose of trials for violations of law offends against the provisions of article 3, section 7, of the constitution, which forbid the passage of any special law regulating practice and jurisdiction in judicial proceedings, or granting to any individual any special or exclusive privilege or immunity.

There is also a grave question whether this act does not come into conflict with the fourteenth amendment to the constitution of the United States, which took away from any state the power to " deny to any person within its jurisdiction the equal protection of the laws."

Should it be held that proceedings against " delinquents " under this act are not prosecutions for criminal offences, then the violation of all the constitutional provisions referred to is still clear ; for the statute forbids prosecutions of those within that class in any other manner.

Larceny is a common-law offense ; in Pennsylvania it has been indictable and triable by jury since the birth of the commonwealth.   This defendant is in prison, adjudged guilty of larceny, but he has never been either indicted or tried by a jury ; he was proceeded against criminally by information.   This involved a violation of the rights which are by article 1 of the constitution of Pennsylvania excepted out of the general powers of government; section 10 declares that " no person shall, for any indictable offense, be proceeded against criminally by information ; " section 9, the accused shall have " in prosecutions by indictment or information, a speedy public trial by an im-

partial jury of the vicinage ; " and section 6. " Trial by jury shall be as heretofore and the right thereof remain inviolate." We do not say that the legislature might not enact a law which would make it possible for one accused to waive, by some positive affirmative action, these constitutional rights, but in criminal proceedings there can be no waiver by mere implication. While the offense remains indictable and persons who are sui juris are, without any action on their part, secure in the right of a jury trial, an act of assembly which requires that a boy fourteen years of age shall make a formal affirmative demand in order to secure a jury trial when charged with such an offense is such a clog upon the right as to involve a violation of the constitutional guaranty : Doebler v. Commonwealth, 3 S. & R. 237 ; Dunn v. Commonwealth, 6 Pa. 384 ; Pennell v. Percival, 13 Pa. 197 ; Van Swartow v. Commonwealth, 24 Pa. 131 ; Byers v. Commonwealth, 42 Pa. 89; Lavery v. Commonwealth, 101 Pa. 560; Warren v. Commonwealth, 37 Pa. 45 ; Stewart v. Commonwealth, 117 Pa. 378 ; Commonwealth v. Saal, 10 Philadelphia, 496.

The motives of those whose influence procured this legislation are worthy of the highest commendation, those who labor to shield the young from evil influences benefit humanity; but benevolent enterprises must be carried out in a constitutional manner. The act of 1901 is an exotic, transplanted from a foreign soil, and sufficient care was not exercised to accommodate it to the conditions prescribed by our organic law.

The judgment is reversed and it is ordered that the defendant be discharged from custody.