Commonwealth for use Cambria County *v.* J. G. Lloyd, one of County Commissioners of Cambria County, Appellant.

*Public officers—County commissioners—Constitutional law—Act of 1872.*

The act of March 16, 1872, P. L. 405, entitled : " An act relating to the county commissioners of Cambria county," in respect to its title, is all sufficient to give notice of any legislation properly pertaining to the rights, duties and powers of the commissioners, and there is nothing in the body of the act that does not pertain to such rights, duties and powers, and instead of being misleading the title is germane to every subject mentioned in the body of the act, and the entire act pertains to but one subject. It follows, therefore, that the act does not offend sec. III. art. 3 of the constitution of Pennsylvania.

*Statutes—Construction of—Legal maxims—Constitutional law.*

From the decisions the following propositions have become legal maxims in Pennsylvania in the matter of the construction of statutes alleged to offend against the constitution.

First, Nothing but a clear usurpation of a power prohibited will justify pronouncing an act of the legislature unconstitutional.

Second, The title of an act is part of the act and a guide to its right construction.

Third, The effect, not the purpose of an act, determines its validity

Fourth, It is not necessary that the title of an act should be a complete index to its contents.

Fifth, If the title fairly gives notice of the subject of the act, so as reasonably to lead to an inquiry into the body of the bill, it is all that is necessary.

Sixth, No act can contain two distinct subjects.

*Statutes—Repeal—Act of March 16, 1872, P. L. 405.*

The act of March 16, 1872, P. L. 405, relating to county commissioners of Cambria county, is not repealed by the general act of May 7, 1889.

*Statutes—Repeal of—Rules of construction.*

First, A general statute without negative words will not repeal a previous local statute although the provisions of both are inconsistent with each other.

Second, A subsequent general or local statute, intended as a substitute for a former one, repeals it pro tanto.

Third, A general statute without negative words cannot repeal a previous statute which is particular although the provisions of the two be different.

Fourth, In considering the question of repeal of statutes the legislative intent presents itself as the true solution of the matter at issue; and such intent must be collected from the words used.

Argued May 6, 1896. Appeal, No. 65, April T., 1896, by defendant, from judgment of C. P. Cambria Co., June Term, 1895, No. 516, on an issue tried by the court without a jury. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Agreement of counsel and decree of court framing issue. Before BARKER, P. J., without a jury; judgment for plaintiff for $681.50.

By agreement of counsel filed, the court directed an issue to determine, first, whether the act of March 16, 1872, P. L. 405, entitled "An act relating to the county commissioners of Cambria county," is constitutional or unconstitutional. Second, whether said act if constitutional is still in force, or is repealed by the act of May 7, 1889, P. L. 109. Third, whether the commissioners are entitled to compensation under the provisions of act of March 16, 1872, P. L. 405, or of act of May 7, 1889, P. L. 109. Fourth, if the court be of the opinion that the act of March 16, 1872, is unconstitutional or repealed by the act of May 7, 1889, then judgment shall be entered for the defendant. Fifth, if the act of March 16, 1872, is still in force then judgment for the plaintiff for the sum of $681.50.

The court, BARKER, P. J., found as questions of law, first,

8      COM. *v.* LLOYD, Appellant.

Statement of Facts—Opinion of the Court. [2 Super. Ct.

that the act of March 16, 1872, P. L. 405, offends in no particular against the constitution; second, that said act is still in force and has not been repealed by act of May 7, 1889 ; that the county commissioners of the county of Cambria are to be paid their compensation under the provisions of said act of 1872.

*Errors assigned* were, (1–9) the rulings of the court below reinforcing and somewhat elaborating the above findings of law.

*Alvin Evans*, with him *M. D. Kittell*, for appellant.

*W. Horace Rose*, with him *M. B. Stephens*, for appellee.

OPINION BY WILLARD, J., May 28, 1896 :

On the 16th day of March, 1872, an act of the legislature was approved, entitled "An act relating to the county commissioners of Cambria county."

The 1st section of the act provides that the commissioners shall assemble at the seat of justice in said county on the third Monday of November in each year for the purpose of organization, and that at said meeting each member elected commissioner shall produce his certificate of election as now provided by law.

The 2d section fixes the salary of each commissioner at $400 per annum in lieu of the daily compensation allowed by law.

The 3d section empowers said commissioners to employ a competent clerk whose compensation shall not exceed $600 per annum.

The constitution of Pennsylvania of 1838, as amended in 1864, provides that " no bill shall be passed by the legislature containing more than one subject, which shall be clearly expressed in the title, except appropriation bills."

It is contended by the appellant that the act of 1872 above referred to is unconstitutional " for the reason that the title does not indicate that which is embraced in the body of the act itself," and that the body of the act contains more than one subject.

The subject of the act of 1872 is " the county commissioners of Cambria county." The title of the act points and relates clearly to the said commissioners, and is a fair index of and concerning any legislation in the body of the act pertaining to the

rights, duties and powers of the said commissioners. The title clearly covers the provisions of the first section as to the time and place of organization in each and every year, and the production of the necessary certificate to entitle a newly elected member to his seat on the board. This is a duty imposed by the act.

The 2d section gives the commissioners each compensation as a right to which they are entitled for services rendered the county in the discharge of their duties, and their compensation is fixed at $400 per annum. We have said that the title clearly indicates any provision in the body of the act touching the rights, duties and powers of the commissioners, and there is no right more thoroughly understood by all the people as inevitably incident to an office than the right to receive fair compensation for the performance of the duties thereof.

By the 3d section the commissioners are empowered to employ a clerk for their assistance and to pay him a salary within certain limits for his services. From the very nature of the duties to be performed by the county commissioners, a clerk to keep a correct record of their proceedings and the books pertaining to the office is a necessary incident thereto, and from the first organization of counties in this commonwealth to the present time persons peculiarly qualified have been employed and paid as commissioners' clerks, and it requires no stretch of the imagination on the part of any citizen or taxpayer to understand and take notice that the title of an act relative to county commissioners might and would include the right of such commissioners to employ and fix the salary of a clerk.

We repeat that the title of this act is all sufficient to give notice of any legislation properly pertaining to the rights, duties and powers of the county commissioners of Cambria county, and there is nothing in the body of the act that does not pertain to such rights, duties and powers, and instead of being misleading the title is germane to every subject mentioned in the body of the act, and the entire act pertains to but one subject.

The amendment of 1864 and section 3 of article 3 of our present constitution are substantially the same, and the rule of construction from 1864 to the present time adopted by the Supreme Court is a sufficient guide in determining the constitutional question raised by this record. As this court is not the final tribunal on this question we propose to carefully consider some

of the cases which we deem decisive, and first those in which it has been declared the subject of legislation was not clearly expressed in the title.

In Dorsey's Appeal, 72 Pa. 192, the title of the act was "An act relating to the liens of mechanics, material-men and laborers upon leasehold estates and property thereon in the county of Venango." The sixth section of the act provided for the filing of liens against freehold estates and was declared unconstitutional for the reason that the title gave no notice of liens to be filed against estates of freehold.

In Union Passenger Railway Co.'s Appeal, 81* Pa. 91, the title was "A further supplement to an act entitled an act to incorporate the Union Passenger Railway Company of Philadelphia approved April 8, 1864, authorizing said company to declare dividends quarterly and to lay additional tracks for the railway." In addition to the territory authorized to be occupied by the railway company in the original act, section two of the supplement authorized the occupation by the railway company of certain new territory and additional streets not provided for in the original act. It was held that the last clause of the title did not clearly express an intent to confer a power to extend the railway into new territory, its apparent meaning being only to authorize the laying down of additional tracks upon the territory and streets mentioned in the original act.

In Beckert v. The City of Allegheny, 85 Pa. 191, the title was "An act relating to grading, paving, curbing and otherwise improving Troy Hill road in the city of Allegheny." The body of the act provided for assessing damages for opening streets not only in Allegheny but in Reserve township outside of Allegheny. Held unconstitutional, as the title did not clearly express the subject of the act.

In re Road in Phœnixville, 109 Pa. 44, the title was "An act relating to boroughs in the county of Chester." The body of the act provided for the transfer of the burden of street damages from the property owners benefited in the borough to the taxpayers of the county at large. Held unconstitutional, as the subject of legislation was not clearly expressed in the title.

In Rogers v. The Improvement Company, 109 Pa. 109, the title was "An act to incorporate the Manufacturer's Improvement Company." The body of the act authorized the clearing

out of Loyalsock creek from source to mouth, to erect dams thereon and to use the same in floating saw logs and timbers, authorizing the charging of tolls therefor. Held unconstitutional, as the subject of legislation was not clearly expressed in the title.

In Commonwealth v. Samuels, 163 Pa. 283, the title was " An act creating the office of county controller in counties of this commonwealth containing one hundred and fifty thousand inhabitants and over, and prescribing his duties." The act abolished the office of county auditor. Held unconstitutional.

In Evans v. Willistown, 168 Pa. 578, the title was " An act to regulate the nomination and election of public officers, requiring certain expenses incident thereto to be paid by the several counties and punishing certain offenses in regard to such elections." The body of the act provided for a mode of increasing indebtedness. Held unconstitutional for the same reason.

To the same effect is Ridge Avenue Pass. Railway Company v. Philadelphia, 124 Pa. 219, also, Phila. v. Ridge Ave. Pass. Railway Company, 142 Pa. 484.

In Sewickley Borough v. Sholes, 118 Pa. 165, the title was " An act to exempt from taxation public property used for public purposes." The body of the act exempted such property and further provided that all property real or personal other than that in actual use and from which any income is derived shall be subject to taxation. Held unconstitutional as the body of the act embraced more than one subject.

In Hatfield v. Commonwealth, 120 Pa. 395, the title was " An act to prohibit the issuing of licenses within two miles of the normal school at Mansfield, Tioga county, Penna." The first section of the act forbids the granting of any license within the designated territory. The second section made it an offense punishable as therein provided for any person to sell spirituous, vinous, malt or brewed liquors for drinking purposes within the prescribed territory. Held unconstitutional as containing two distinct subjects.

In Pierie v. Phila., 139 Pa. 573, the title was " An act to perfect the record of deeds, mortgages and other instruments in certain cases." The body of the act creates a new duty to be performed in every recorder's office in the commonwealth of

which the title gave no notice. The title indicated an act to perfect records which required no perfecting and was therefore misleading and unconstitutional.

In McGee's Appeal, 114 Pa. 478, it is held that if it be conceded that the title does not fully express the subject of the act, it is only those provisions not covered by it that are void. To the same effect is Dewhurst v. Allegheny, 95 Pa. 437.

In Blood v. Marcelliott, 53 Pa. 391, the title was " An act to increase the boundaries of Forest county." The body of the act provided for the extension of the borders of the county locating the seat of justice and accepting donations for public buildings.' Held not to conflict with article 11 of the constitution, as amended in 1864, prohibiting the inclusion of more than one subject in the title of an act.

In Commonwealth v. Green, 58 Pa. 226, the title was " An act to establish a criminal court for Dauphin, Lebanon and Schuylkill counties." The act provided for the appointment and election of a judge, and for a clerk by whom grand and common jurors should be chosen and summoned. Held, that the amendment of 1864 never intended that the title of an act should be a complete index of its contents ; that there was nothing in the act not embraced in the title or which does not relate to the establishment of a criminal court in the counties named ; that the intention of the constitutional amendment was to require that the real purpose of a bill should not be disguised or covered by the general words, and that it must be a clear case to justify a court in pronouncing an act or any part of it void on this ground.

In Yeager v. Weaver, 64 Pa. 425, the title was " An act allowing parties in interest to be witnesses." The body of the act extended the provisions of the law to persons not parties who had been before excluded as witnesses on the score of policy. Held to be cognate to the subject of the title; and, further, that the people by the amendment of 1864 did not mean to require the title to be a full index of all the contents of the law, but by declaring that each bill should be confined to one subject which shall be clearly expressed in the title to prohibit the vicious habit of rolling together what were termed " omnibus bills," including sometimes more than one hundred sections on entirely different subjects with the title of the enactment of the first section " and for other purposes."

In Allegheny County Home's Case, 77 Pa. 77, the title was "An act providing for an equitable division of property between Allegheny county and the city of Pittsburg." The county composed a poor district known as the Allegheny County Home. Certain townships of the county were annexed to Pittsburg. The second section of the act provided that the value of the interest of the annexed townships in the Home property should be ascertained and paid to the guardians of the poor of Pittsburg. The third section extended the provisions of the act to Allegheny city as provided for Pittsburg. Held, that the two sections were constitutional, that they did not contain more than one subject which was not expressed in the title, and if even the third section were unconstitutional that did not affect the constitutionality of the other sections.

2d. All that is required is that the title fairly give notice of the subject of the act so as to reasonably lead to an inquiry into its body.

3d. The title should not mislead or tend to avert inquiry into the contents of the act.

In State Line & Juniata R. R. Co.'s Appeal, 77 Pa. 429, a supplement and a further supplement to an original act were considered. The title of the original act was "An act to incorporate the State Line & Juniata Railroad Company." The supplement was entitled " A supplement to an act to incorporate the State Line & Juniata Railroad Company." The further supplement was entitled " A further supplement to an act to incorporate the State Line & Juniata R. R. Company." All the provisions in both supplements referred to the State Line & Juniata R. R. Co. Held, that the object of the supplements was sufficiently expressed in their titles, the objects being germane to the original act. To the same effect is In re Borough of Pottstown, 117 Pa. 538; also Craig v. The Presbyterian Church, 88 Pa. 42.

In Penna. R. R. Co. v. Riblet, 66 Pa. 164, it is held that the title of an act is part of the act and a guide to its right construction; that the effect, not the purpose of an act, determines its validity; that nothing but a clear usurpation of a power prohibited will justify pronouncing an act of legislature void.

From the decisions above quoted it follows that the following propositions have become legal maxims in Pennsylvania:

First, That nothing but a clear usurpation of a power prohibited will justify pronouncing an act of the legislature unconstitutional.

Second, That the title of an act is part of the act and a guide to its right construction.

Third, That the effect, not the purpose of an act determines its validity.

Fourth, It is not necessary that the title of an act should be a complete index to its contents.

Fifth, If the title fairly give notice of the subject of the act, so as reasonably to lead to an inquiry into the body of the bill, it is all that is necessary.

Sixth, No act can contain two distinct subjects.

Applying these maxims to the case before us, it is apparent that the title of the act was sufficient to give notice to every party interested of the subject-matter contained in the body of the act, and that that matter related to the county commissioners of Cambria county and to no other subject.

It is also contended on the part of the appellant that the act of March 16, 1872, P. L. 405, is repealed by the general act of May 7, 1889. The act of March 16, 1872, P. L. 405, is a special local and particular statute applicable only to the commissioners of Cambria county. Following the long recognized and true rule of construction, we held In re Melon Street, 1 Super. Ct. 73, that the general act of May 16, 1891, did not repeal the local and special act entitled " A further supplement to the act incorporating the city of Philadelphia, approved April 21, 1858," for the reason that a general statute without negative words will not repeal a previous local statute although the provisions of both are inconsistent with each other.

Notwithstanding the above rule it is equally true that a subsequent general or local statute intended as a substitute for a former one repeals it pro tanto, and so it was decided in Nusser v. Commonwealth, 25 Pa. 126; Commonwealth ex rel. v. Grier, 152 Pa. 176; McCleary v. Allegheny County, 163 Pa. 578; Commonwealth ex rel. v. Weir, 165 Pa. 284; Commonwealth ex rel. v. Schneipp, 166 Pa. 401; Commonwealth v. Mann, 168 Pa. 290; Gilchrist v. Strong, 167 Pa. 628; Commonwealth ex rel. v. Wunch, 167 Pa. 187; Fenner v. Luzerne Co., 167 Pa. 632.

In Bruce et al. v. Pittsburg, 166 Pa. 152, it was decided that the local act of April 6, 1850, limiting the debt of the city of Pittsburg to $1,500,000 is repealed by the constitution and act of April 20, 1874. It was also held that "whenever any law regulating the municipal affairs of cities of a given class shall be found to conflict with a previous local statute applicable to any member of the class relating to the subject, the latter must give way by reason of the nature and purpose of class legislation." So it was held in Commonwealth v. Macferron, 152 Pa. 244, "While a previous local statute is not repealed by a subsequent general statute inconsistent with it unless words of repeal are employed, yet such a rule is not applicable to the classification acts first because the legislative intent to repeal local laws is fully expressed in those acts; second, because those acts are of a character to exclude the operation of the rule, being intended to revise the laws relating to municipal affairs, so as to reduce all former types and forms of municipal government to three, one for each class; third, because the very nature of class legislation renders the rule inapplicable. Whenever any law regulating municipal affairs of cities of the given class shall be found to conflict with a previous local statute applicable to any member of the class relating to the same subject, the latter must give way by reason of the nature and purpose of class legislation." To the same effect is Quinn v. Cumberland County, 162 Pa. 55.

There is another class of cases which should be carefully considered in arriving at a true solution of the question involved in this case. In Brown v. County Commissioners, 21 Pa. 43, it was held that "a general statute without negative words cannot repeal a previous statute which is particular though the provisions of the two be different.

In Bell v. Allegheny County, 149 Pa. 381, it was said by Mr. Justice HEYDRICK that this rule was as old as the "Common Law," and it was there held that "a general affirmative statute will not repeal a previous particular statute upon the same subject though the provisions of the former be different from those of the latter," and it was further held that "the local acts of May 1, 1861, and March 11, 1870, fixing the salary of the treasurer of Allegheny Co., were not repealed by the act of March 31, 1876, P. L. 13, because the salary of the treasurer

was a fixed sum, not made up in part fees and part salary, and that the mandate of sec. 5, art. 14, of the constitution, that the compensation of the county officers shall be regulated by law was satisfied in regard to the treasurer of Allegheny Co. by the special act of 1861, and its supplement of 1870."

But in the case of Commonwealth v. Grier, and McCleary v. Allegheny county, supra, it was decided that the general act of 1876 did repeal the prior local acts relative to the fees and salary of the district attorney and sheriff of Allegheny county, for the reason that they were partly paid by salary and partly by fees, and there was a clear legislative intent to substitute for the local acts a new rule by the provisions of the general act of 1876.

In Morrison v. Fayette County, 127 Pa. 110, it was held that a general act which provided that the auditors of each county within the commonwealth should be allowed $3.00 per day and mileage, did not repeal the local law pertaining to Fayette county which allowed the auditors $3.00 per day and was silent as to mileage, for the reason that there was no legislative intent to repeal the local act.

In Bank v. Commonwealth, 26 Pa. 446, it was held that "the general rule is that where two statutes contain repugnant provisions the one last signed by the governor is a repeal of the one previously signed. This is so merely because it is presumed to be so intended by the lawmaking power; but where the intention is otherwise, and that intention is apparent from the face of either enactment, the plain meaning of the legislative power thus manifested is the paramount rule of construction."

By the provisions of section 14 of the act of March 31, 1876, P. L. 13, entitled " An act to carry into effect section 5, of article 14 of the constitution relative to the salaries of county officers and the payment of fees received by them into the state and county treasury in counties containing over 150,000 inhabitants," it was enacted, inter alia, that the salary of county auditors in counties containing between one hundred and fifty thousand and two hundred and fifty thousand inhabitants should be $500 per annum. This act applied to the county of Luzerne, as that county by the census of 1890 contained over one hundred and fifty thousand and less than two hundred and fifty thousand inhabitants.

On May 12, 1887, a general act was passed entitled " An act regulating the compensation of county auditors within this commonwealth." The first and only section provided that the auditors in each county in the commonwealth should be allowed out of the county funds the sum of $3.00 each for each and every day necessarily employed in the discharge of their duties, together with six cents per mile circular, from and to their homes, once for each and every week so employed.

In 1891, George W. Rymer, then one of the county auditors of Luzerne county, demanded compensation at the rate of $3.00 per day and mileage under the act of 1887, instead of his salary of $500 per annum under the act of 1876, upon the ground that the general act of 1887 repealed the general act of 1876. The court below gave judgment on a case stated against him, holding that the act of 1876 was not repealed by the act of 1887. In Rymer v. Luzerne County, 142 Pa. 108, the Supreme Court affirmed the judgment, holding that " while the act of 1876 is neither a local nor a special law for the reason that it applies to all counties of a certain class, and that class created by the constitution itself; yet its operation is confined to a limited number of counties and we think comes within the reason of the rule laid down in numerous cases, that a general statute without negative words does not repeal a previous statute which is particular, even though the provisions of one be different from the other."

Although this case was not cited by counsel in their paperbooks, we think it decisive of the question raised in this case as to the repeal of the local and particular statute of 1872, relative to the county commissioners of Cambria county by the general act of 1889, and might have been decided on its authority.

The importance of the question however to the people of Cambria county, and every other county governed by similar statutes, warrants us in pursuing the question and considering it in all its features. And here the question of legislative intent presents itself as the true solution of the matter at issue. Did the legislature by the act of May 7, 1889, intend to repeal the act of March 16, 1872, or was the former act intended as a substitute for the latter ? Quoting from the language of the learned trial judge, " At the time the act of 1889 was passed there were on the statute books of this state local laws fixing

the compensation of the county commissioners of Crawford, Cambria and York counties at $400 per annum, of Berks county at $500 per annum, of Bucks county at $800 per annum, of Dauphin county at $1,200 per annum, and local laws for fifty-seven other counties in the state fixing a per diem compensation ranging from $1.50 to $4.00 (Northampton county being the only one in which the compensation was more than $3.50). In Philadelphia and Allegheny counties the commissioners were allowed $5,000 and $2,000 per annum respectively under the act of March 31, 1876, P. L. 13, fixing an annual compensation for all county officers in counties having upwards of one hundred and fifty thousand population, and in Perry and Union counties the compensation was $1.50 per diem under the general act of 1835, no local laws having been enacted for those counties. To recapitulate : In two counties of the state the commissioners were paid $1.50 per day under a general act, in fifty-six counties they were paid sums ranging from $1.50 to $3.50 under local acts, in one county $4.00 by a local act and in eight counties an annual compensation fixed for six of them by local acts and for two by a law general in its character."

Applying the rule that the legislative intent must be collected from the words used, we find that by the act of 1889 it is provided in the first section "that the county commissioners of the several counties in this commonwealth hereafter elected or appointed shall be allowed and paid out of the county funds the sum of $3.50 each for each and every day actually and necessarily employed in the discharge of the duties of their office," with this proviso : "Provided, that the pay allowed by this act shall be in lieu of all other compensation and charges for the individual services and expenses of said commissioners." Section 3 provides as follows : " All local laws fixing a rate of per diem compensation less than is provided in this act, be and the same are hereby repealed."

By section 3 it was clearly intended to repeal all local acts where the rate of per diem compensation was fixed at a less rate than $3.50 per diem. By the act of 1872 no per diem compensation is fixed, but under its provisions each of the commissioners receives a salary of $400 per annum and from the words of this repealing clause no intention can be collected to substitute for this annual salary a per diem allowance.

In connection with the act of May 13, 1889, P. L. 200, and shedding light on the question of legislative intent, the legislature itself by a contemporaneous act has given construction to the repealing clause of the act of 1889. By an act approved May 13, 1889, P. L. 200, entitled "An act regulating the payment of the traveling expenses of directors of the poor and county commissioners within this commonwealth," the repealing clause reads as follows: "So much of all general acts heretofore passed as are inconsistent herewith are hereby repealed, but this act shall not apply to any local law regulating the same." If the legislature intended by the general act of May 7, 1889, to repeal all local acts, why the use of the language above quoted in the repealing clause of May 13, of the same year? Again in 1893 by an act approved June 6, P. L. 358, the legislature repealed the local acts, fixing the salaries of the county commissioners of Crawford county at $400, and by the same act extended to that county the provisions of the general act of May 7, 1889. If the act of 1872 was repealed by that of 1889 as to Cambria county, so was the local act of like character repealed as to Crawford county, but the legislature did not so construe its own work, hence the act of June 8, 1893, above referred to.

The argument of the learned counsel for the appellant as to the intention of the act of 1889 to introduce a new and uniform system in the state for the payment of county commissioners, and that all local laws are supplied and therefore repealed by its provisions cannot be sustained on principle or authority. Rymer v. Luzerne County, supra, is a sufficient answer to the argument without more.

Until the act of March 16, 1872, relating to the county commissioners of Cambria county, is repealed or supplied by apt legislation, it must stand. We fully concur with the learned trial judge in his very able opinion that the act in question is not repealed nor is it unconstitutional.

The specifications of error are overruled and the judgment is affirmed.