## Commonwealth *v.* Fisher, Appellant.

*Constitutional law—Title of statute—Courts—Juvenile court—Trial by jury—Class legislation—Act of April 23, 1903, P. L. 274.*

The Act of April 23, 1903, P. L. 274, entitled an act "Defining the powers of the several courts of quarter sessions of the peace, within this commonwealth, with reference to the care, treatment and control of dependent, neglected, incorrigible and delinquent children, under the age of sixteen years and providing for the means in which such power may be exercised," is constitutional.    The act is sufficient in title, and does not contain more than one subject.    It does not create a court unknown to the constitution;

nor does it deprive juveniles charged with crime of their constitutional right of trial by jury; nor is it class legislation.

Argued Oct. 5, 1904. Appeal, No. 69, Oct. T., 1904, by defendant, from order of Q. S. Phila. Co., delinquent certificate, No. 645, committing. defendant to house of refuge in case of Commonwealth v. Frank Fisher. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER and MORRISON, JJ. Affirmed.

Indictment for larceny.

From the record it appeared that the defendant, a boy of fourteen years old, was indicted for larceny and pleaded not guilty. After the indictment, upon certificate by the district attorney certifying that a prosecution was not required, the court of quarter sessions, sitting as a juvenile court, by DAVIS, J., committed the defendant to the house of refuge.

The case turned exclusively upon the constitutionality of the Act of April 23, 1903, P. L. 274.

*Error assigned* was the order of the court.

*John H. Fow,* for appellant.—The legislative direction in the act as to creating the court and as to who shall sit in the juvenile court is an usurpation of prohibited power and in such cases the court has always declared the act unconstitutional: Speer v. School Directors, 50 Pa. 150; Hilbish v. Catherman, 64 Pa. 154; Penna R. R. Co. v. Riblet, 66 Pa. 164; Com. ex rel. Wolfe v. Butler, 11 W. N. C. 241; In Re Mansfield, 22 Pa. Superior Ct. 224; Commonwealth v. Potts, 79 Pa. 164; Commonwealth v. Swank, 79 Pa. 154.

The act is also unconstitutional because it violates the rights guaranteed the citizen of a trial by jury: Doebler v. Com., 3 S. & R. 237; State v. Carman, 63 Iowa, 130 (18 N. W. Repr. 691); Mansfield's Case, 22 Pa. Superior Ct. 224.

Special burdens cannot be laid nor immunity granted to particular classes in this community: Millett v. People, 117 Ill. 294 (7 N. E. Repr. 631); Godcharles v. Wigeman, 113 Pa. 431; Strine v. Foltz, 113 Pa. 349; School District of Greensburg v. School District of East Greensburg, 23 C. C. Rep. 285; Sewickley School District v. Osburn School District, 19 C. C. Rep. 257; School District v. School District, 21 C. C. Rep. 176; Appeal from Paving Certain Streets, 137 Pa. 494.

This act is also unconstitutional as it contains more subjects than one, some of which are not expressed in the title nor any notice whatever given thereof: Phœnixville Road, 109 Pa. 44; Dorsey's App., 72 Pa. 192; Railway Co.'s App., 29 Legal Int. 380; Com. v. Moorhead, 7 Pa. C. C. Rep. 513.

*Owen J. Roberts*, assistant district attorney, and *John C. Bell*, district attorney, for appellee.— The appellant's argument is founded upon two false assumptions as to the act of 1903. They are (1) that the act is one regulating criminal procedure; and (2) that it creates a new court to administer the criminal law of this commonwealth.   Not one word is said, either in the title or the preamble, which contains the faintest suggestion that the act is one regulating criminal procedure ; on the contrary, the legislature took pains, in the preamble, to distinguish the powers defined by the act from those exercised in the administration of the criminal law.

Any criminal proceeding against a child, if such a criminal proceeding exists, is separate and distinct from the inquiry and proceedings provided for in this act, though such criminal proceedings may be triable at another session of the quarter sessions court which holds the session provided for by this act.

The second assumption, that this act creates a new court, is unjustified by its terms: 1 Holdworth's History of English Law, 125 ; Com. v. Andrews, 24 Pa. Superior Ct. 571.

The quarter sessions court has for years had a jurisdiction over children similar to that given in the act of 1903, and the constitutional propriety of such jurisdiction was passed upon and affirmed by no less authority than Chief Justice GIBSON, in the case of Ex parte Crouse, 4 Wharton, 9 ; Bamber v. Com., 10 Pa. 339.

The argument that the act is unconstitutional because the manner of acquiring jurisdiction is in contravention of the recognized modes of bringing one accused of crime to a trial, is based on the same false assumption, heretofore answered, that the act is intended to regulate criminal procedure.

OPINION BY BEAVER, J., January 17, 1905 :

In Mansfield's case, 22 Pa. Superior Ct. 224, we construed and held unconstitutional the Act of May 21, 1901, P. L. 279,

for the reasons therein set forth.   It was entitled an act " To regulate the treatment and control of dependent, neglected and delinquent children, under the age of sixteen years; providing for the establishment of juvenile courts; regulating the practice before such courts; providing for the appointment of probation officers; prohibiting the commitment to jail or police station of a child under fourteen years of age; providing for the appointment, compensation and duties of agents of juvenile reformatories; imposing certain duties upon the Board of Public Charities of this state; regulating the incorporation of associations for the care of dependent, neglected or delinquent children; prohibiting foreign associations from placing children in homes in this state for adoption or under indenture, except under certain conditions; providing for the appointment of a board of visitors, and repealing acts and parts of acts inconsistent with the provisions of this act."

The present case arises under the provisions of the Act of April 23, 1903, P. L. 274, entitled an act " Defining the powers of the several courts of quarter sessions of the peace, within this commonwealth, with reference to the care, treatment and control of dependent, neglected, incorrigible and delinquent children, under the age of sixteen years, and providing for the means in which such power may be exercised."

A mere comparison of these two several acts by their titles shows a very marked and clear distinction between them. The title of the former act was held by us to be defective in several particulars which have been carefully avoided in the act now under consideration.   The former act provides expressly for the establishment of juvenile courts.   The present act simply defines the powers of the courts of quarter sessions already in existence.   In the preparation of the act of 1903, there is an evident intention and desire to avoid all of the features of the previous act which were held in the Mansfield case to be either unconstitutional or undesirable and the effort, as we view it, has, on the whole, been successful. The grounds upon which legislation of this character is based are fairly set forth in the preamble of the present act.   The beneficient provisions of such legislation center in and flow from the very highest considerations of public policy.   As was said by our Brother PORTER in the former case: " The

motives of those whose influence procured this legislation are worthy of the highest commendation. Those who labor to shield the young from evil influences benefit humanity; but benevolent enterprises must be carrried out in a constitutional manner." The mandate of the constitution, is, of course, supreme. Pure motives, benevolent plans and beneficient acts, however praiseworthy within themselves, must · be carried out, so far as the law is necessary to enable them to do so, subordinate to and under the express sanction of the constitution. Is the act which we are considering in harmony with the constitution?

As was said by the present chief justice in Sugar Notch Borough, 192 Pa. 349. " It must not be lost sight of that the attitude of courts is not one of hostility to acts whose constitutionality is attacked. On the contrary, all the presumptions are in their favor, and courts are not to be astute in finding or sustaining objections." On the other hand, however commendable the object of the act may be, however free from doubt or difficulty as to its main provisions, if it offend in only one particular the provisions of the constitution, no matter what our view of the propriety of such constitutional provision may be, it must be held to be guilty of a violation of the whole. Let us, therefore, inquire, briefly, upon what grounds the constitutionality of the act of 1903 is attacked.

The assignments of error are very general and the grounds upon which the unconstitutionality of the act is alleged are not specifically set forth. We gather, however, from the argument in the main what they are and will consider them seriatim.

1. Is the title sufficient? It is brief, clear and concise but it is also comprehensive. It simply defines the powers of the courts of quarter sessions with reference to the care, treatment and control of dependent, neglected, incorrigible and delinquent children under the age of sixteen years and provides for the manner in which such power may be exercised. We can find nothing in the act which is not clearly embraced in the title. True it is not an index as to every step to be observed by the court of quarter sessions in the exercise of the powers conferred by the act, but that is not necessary, as we have many times said. It is in striking contrast, so far as the title is concerned, with the act of 1901, which is repealed by the

one under consideration.   We think the title clearly sufficient: Com. v. Lloyd, 2 Pa. Superior Ct. 6 ; Rose v. Beaver County, 204 Pa. 372.

2. Does the act contain more than one subject ?   This is alleged by the appellant in his argument and paragraphs 2 and 3 of section 2 and sections 10 and 11 are quoted as illustrations.   The second section of the act simply provides in what manner the children referred to in the title may be brought within the jurisdiction of the court of quarter sessions for the purposes of the act.   It is, of course, therefore, entirely germane to the main purpose of the act, which would be practically useless without its several provisions.   Anyone interested in the question would undoubtedly have his attention drawn to the provisions of the act by its comprehensive title.   He would have found, as he would naturally expect to find, that some preliminary steps were to be taken, in order to bring the persons provided for in the act within the jurisdiction of the court of quarter sessions.   This can be done, under the provisions of the sections referred to, by a magistrate or by the district attorney, but surely these steps are not only germane but essential to the integrity and practical utility of the act.

The act also provides how the court shall dispose of the children brought within its jurisdiction, but that is surely one of the means by which its power is to be exercised, so as to put into practical operation the provisions in section 10, which are alleged to be outside the title and to constitute a foreign and independent subject.   In section 11 it provides that " Nothing herein contained shall be in derogation of the powers of the courts of quarter sessions and oyer and terminer to try upon an indictment, a delinquent child who, in due course may be brought to trial."   This is clearly within the title " providing for the means in which such power may be exercised."   It provides negatively for what the court shall not do, as is provided in other portions of the law positively what it shall do, but it is as important to know what the court of quarter sessions shall not do, under the provisions of the law, as what it shall do.   It tends to clearness and definiteness, but is not in any sense a new subject or one without the scope of the title.

3. The first assignment of error sets forth " That the court before which the defendant appeared is an unconstitutional body and without jurisdiction." This begs the question. We infer, however, from the argument, that the appellant intended to say that the act created a court unknown to the constitution, although, as is plainly apparent, no new court is created and the ancient court of quarter sessions, which is older than all the constitutions of Pennsylvania, is given thereby not greater but different powers from those previously exercised.

The court of quarter sessions has for many years exercised jurisdiction over the settlement of paupers, over the relation of a man to his wife and children in desertion cases, in surety of the peace cases, in the granting of liquor licenses and in very many of the ways in which the public welfare is involved, where there is neither indictment nor trial by jury. It might as well be said that the court of quarter sessions is not a court of quarter sessions, because it keeps a separate road docket, or for convenience a separate docket for desertion cases, or appoints days in which it will hear a certain class of cases or, as it is said in popular parlance, will hold a " license court." In the latter class of cases, where there is more than one court of common pleas within a county, it is usual for the courts themselves to designate the judges who shall hold what is known as the license court. It has never been claimed, so far as we know—certainly not successfully claimed—that such designation was in any sense unconstitutional or that, because of the designation, a separate court was created. It is no more so in the case under consideration than in any of the cases spoken of above.

4. It is further claimed, as set forth in the second and third assignments of error, that the court erred in not allowing the defendant his constitutional right of trial by jury.

It appears from the record that the defendant was charged with larceny, that three several indictments therefor had been duly found but that the district attorney, being of the opinion that the public welfare did not demand a trial by jury and that the defendant's age and condition were such that it would be better for him and also better for the public that he should be treated leniently, instead of being tried and sentenced to a public institution as a condemned criminal, for punishment,

and, if possible, for reformation, certified the case to the court of quarter sessions, under the provisions of the act now under consideration. Much is said in this case about the right of trial by jury and the sacredness of it is not to be minimized. In order, however, to understand the relation which this question bears to this and similar cases, it may be well to consider the object of this legislation. It is to save, not to punish; it is to rescue, not to imprison; it is to subject to wise care, treatment and control rather than to incarcerate in penitentiaries and jails; it is to strengthen the better instincts and to check the tendencies which are evil; it aims, in the absence of proper parental care, or guardianship, to throw around a child, just starting in an evil course, the strong arm of the parens patriae.

After hearing, under the humane provisions of this act, the court committed the defendant to the house of refuge, after which the district attorney called up the three indictments, in two of which Fisher was the only defendant, and in the other of which he was jointly indicted with one, Thomas White, in all of which he took verdicts of " Not guilty; county to pay the costs," in order that no record of a criminal act might remain open against the defendant. This, on its face, appears to be an act of mercy and there is nothing on the record which shows in any way that it is not what it seems.

It is expressly provided in section 11 that, "Nothing herein contained shall be in derogation of the powers of the courts of quarter sessions and of oyer and terminer to try, upon an indictment, any delinquent child who, in due course, may be brought to trial."

If testimony was taken before the judge at the hearing, it has not been furnished us by the appellant or, if demand for trial by jury was made in the court below, it does not appear upon the record. If trial by jury had been desired in this particular case, it was only necessary for the defendant, his father or attorney or any other person on his behalf, to have made formal demand therefor and had it made matter of record and, if denied, of exception, in order to raise a concrete question for adjudication. We, however, have nothing of that kind here. In view of the provisions of the act, we can see no difficulty whatever in a defendant, or anyone for him who may be interested in securing his constitutional right of trial by

jury, having such a trial.    Whenever evidence of the denial of such a right is brought to the attention of an appellate court, it will probably not be necessary to declare this act unconstitutional, in order to remedy the evil, but simply to return the case for a regular trial by jury, if it should appear that such a trial was denied.

It is probable that in the administration of this law the courts will, by rule, through the appointment of an attorney, or otherwise, make known to and available for those who come within the scope of its provisions the constitutional right of trial by jury to which every defendant is entitled.

5. The act is further objected to on the ground that it is class legislation.    That was one of the serious objections to the act of 1901, and it was declared unconstitutional among other reasons on that ground, but in that act the distinction was made between children who were inmates of a state institution or any training school for boys or industrial school for girls or some institution incorporated under the laws of this state and children who were not such inmates.    The present act, however, relates to all children of the same class under a certain age.    The general principles laid down in Wheeler v. Philadelphia, 77 Pa. 338, in which it is stated that a statute relating to persons or things as a class is a general law, one relating to particular persons or things of a class is special, applies with equal force here as in the case in which that principle was declared.    This subject has been so exhaustively treated in many cases that it is not necessary to enlarge upon it here.    We think that in this particular the constitutional difficulty in regard to the previous act has been obviated.

We have considered this case, in all of its aspects, at considerable length, without in any way trying the assignments of error by technical rules, but the case is one of great importance, not only for those who are likely to be brought within the scope of its provisions but is of equal importance to the commonwealth which is vitally interested in rescuing and saving its children, wherever rescue, care and a substitute for parental control are required, to the end that they may, in the enjoyment of sober, industrious and happy lives, fill the full measure of good citizenship.

The act under consideration, as we view it, offends against

none of the provisions of the constitution. It avoids the difficulties in this respect of the act of 1901, which were so forcibly pointed out by our Brother PORTER in the Mansfield case; and, as it was administered in this case, seems to have been done judiciously and wisely.

The assignments of error are all overruled.

Judgment affirmed.

RICE, P. J., and PORTER, J., dissented.