## Bowers v. Smith, County Treasurer.

John G. Love, for plaintiff; S. D. Gettig, for defendant.

FLEMING, P. J., Sept. 18, 1930.—The bill filed herein raises the question of the constitutionality of the Act of May 9, 1929, P. L. 1684. At the time of the filing of the bill, to wit, Aug. 2, 1930, the county treasurer had, pursuant to the provisions of said act, advertised for sale the real estate of the plaintiff, together with real estate of numberous other taxpayers, within the county. This sale was advertised to be held on Aug. 4, 1930.

The questions raised were of such vital importance to the taxpayers and to the county that we felt that the act should be carefully considered before an injunction was granted or refused. We, accordingly, directed the county treasurer to adjourn such sale to a day certain, issued a rule upon him to show cause why an injunction should not be granted, and fixed a date for hearing on such rule. The county treasurer, fully recognizing the importance of the matter, has coöperated most fully, adjourning his sale to a date certain, the matter has been argued, and is now before us for final disposition.

The plaintiff, in his argument, has asserted three main reasons why the county treasurer should be restrained from making sale as aforesaid, to wit:

1. That the Act of May 9, 1929, P. L. 1684, offends against article III, section 3, of the Constitution of the Commonwealth of Pennsylvania.

2. That the Act of May 9, 1929, P. L. 1684, offends against the 14th Amendment to the Constitution of the United States.

3. That the Act of May 9, 1929, P. L. 1684, in so far as 1929 taxes in Centre County are concerned, is not retroactive, and that its provisions, therefore, if constitutional, do not authorize the sale as advertised in this proceeding.

Section 3, article III, of the Constitution of the Commonwealth of Pennsylvania provides that "no bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title." The title of the Act of 1929 in question is as follows:

"An act authorizing and empowering the county treasurers of the several counties of this Commonwealth to sell at public sale all seated lands upon which taxes assessed on such seated lands by authority of any county, borough, town, township, school district, and poor district are delinquent and remain unpaid, and fixing penalties for such delinquency; authorizing county commissioners to purchase such lands under certain circumstances."

It is contended that because section 1 of the act in question prescribes certain duties to be performed by tax collectors, by way of making returns of unpaid taxes, for which no liens have been filed, on or before a day certain named in the act, that this is introducing a matter not expressed in the title. We cannot assent to this contention. The title to the act gives ample notice of its intent to authorize and empower county treasurers to sell, at public sale, those seated lands upon which taxes have not been paid. Taxes levied and assessed by the several taxing authorities are collected by our tax collectors. They alone are in a position to know what taxes remain unpaid. Until that knowledge is imparted to those in whom our legislature has vested the power of sale for such delinquency, no such sales can be had. The subject of the return of unpaid taxes by the collector is fully connected with and wholly germane to the one general subject of the act, to wit, the sale of seated lands for non-payment of taxes.

Mr. Justice Mestrezat, in Booth & Flinn, Ltd., v. Miller, 237 Pa. 297, 303, in speaking of section 3, article III, of our Constitution, says, in part:

"The purpose of the section in question was, as we have frequently said, to strike down omnibus bills which unite in the same law subjects entirely foreign to and not connected with each other, thereby giving no notice of the greater part of the contents of the bill and affording opportunity for fraud and deception. It is, however, no infringement of the section, if there are several provisions in the bill, provided they are connected with and germane to the one general subject of the legislation. It is sufficient if they relate to and are a means of carrying out the one general purpose of the act. As said by Sterrett, C. J., in Kelley v. Mayberry Township, 154 Pa. 440, 449, instead of containing more than one subject, the provisions are cognate, each, respectively, relating not to a separate and independent subject of legislation, but to branches of the same general subject."

The title need not embody all the distinct provisions of the bill nor serve as an index or digest of its contents, but it is sufficient if the title fairly gives notice of the real subject of the bill so as to reasonably lead to an inquiry into what is contained in the body of the bill: Com. v. Lloyd, 2 Pa. Superior Ct. 6; Rose v. Beaver County, 204 Pa. 372; Buffalo B. M. F. C. v. Breitinger, 250 Pa. 225; Fedorowicz v. Brobst, 62 Pa. Superior Ct. 458, 254 Pa. 338. These and many other authorities show this to be the long established rule in such matters.

The act in question clearly states in its title that it is an act authorizing and empowering county treasurers to sell seated lands for non-payment of

taxes and fixing penalties for such delinquency. Section 1 prescribes what such penalties shall be and provides that tax collectors shall return unpaid taxes on seated lands to the county commissioners of the county wherein such real estate lies, and for which no liens have been filed, not later than the first Monday of May, in the year succeeding the year in which the respective taxes were assessed and levied. The county commissioners and the several tax collectors are the basic and fundamental offices in our system of taxation and have long since been such. The former fix the millage for county purposes and coöperate with borough, township, school and poor authorities in embodying in the duplicate such taxes, other than county tax, as are levied and assessed upon seated lands. The latter receives or collects such taxes and is responsible personally or through his sureties for his failure so to do. The empowering of the county treasurer to sell seated lands upon which such taxes remain unpaid is but a further step in the furtherance of a common purpose, to wit, the levying and collection of taxes, embodied in one general subject of taxation. "Instead of containing more than one subject, the provisions . . . are cognate, each respectively, relating not to a separate and independent subject of legislation, but to branches of the same general subject:" Kelley *v.* Mayberry Township, 154 Pa. 440, 449. Of this conclusion we have no doubt, but if such doubt existed it would be our duty to resolve such doubt in favor of the validity of the legislation: Com. ex rel. *v.* Benn, 284 Pa. 421. We, therefore, find no merit in plaintiff's contention that the act is unconstitutional as being an infringement upon section 3, article III, of the Constitution of the Commonwealth of Pennsylvania.

The 14th Amendment to the Constitution of the United States, section 1, provides that "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Plaintiff's further contention is that section 9 of the Act of May 9, 1929, P. L. 1684, violates the 14th Amendment to the Constitution of the United States, in that it deprives persons of their property without due process of law. Section 9 of the act in question provides as follows:

"It shall be the duty of the county treasurer, at the first term of a court of common pleas of the proper county succeeding such sale, to make a report and return, wherein he shall set forth a brief description of the land or property sold, the name of the person (when known) in which the same is assessed, the amount of tax and the year for which the same is assessed, the time when and the newspapers in which the advertisement for sale was made, with a copy of said advertisement, the time of sale, the name of the purchaser, and the price for which each respective property was sold; and, upon the presentation of said report or return, if it shall appear to said court that such sale has been regularly conducted, under the provisions of this act, the said report and the sale so made shall be confirmed *nisi;* in case no objections or exceptions are filed to said sales within ten days, a decree of absolute confirmation may be entered as of course by the prothonotary. In case any objections or exceptions are filed, they shall be disposed of according to the practice of the court, and, when the same are overruled or set aside, a decree of absolute confirmation shall be entered as aforesaid, but all objections or exceptions shall be confined to the regularity of the proceedings of said treasurer."

The specific objection to this section is that the objections and exceptions to be offered to the confirmation of sale are confined and restricted to such as pertain to the regularity of the proceedings of said treasurer.

"The guaranty of due process of law is one of the most important to be found in the federal constitution or any of the amendments; indeed, it has been said that without it the right of private property could not be said to exist, in the sense in which it is known to our laws. The right is of such importance that the people have never delegated to either the state or federal government the power to deprive a person of property except by observing its requirements. The provisions embodying this guaranty have received a very broad and liberal interpretation, and it has been said that the guaranty is always and everywhere present to protect the citizen against arbitrary interference with his rights. Its effect is to inhibit the taking of one person's property and giving it to another, contrary to settled usages and modes of procedure, without notice and opportunity for a hearing. An attempt by statute to work such a change of ownership would be a glaring violation of this guaranty, and could not be defended as an exercise of the police power. The term 'law' as used in this guaranty, embraces all legal and equitable rules defining human rights and duties, and providing for their enforcement; not only as between man and man, but also between the state and its citizens. The term 'due process of law' includes all the steps essential to deprive a person of life, liberty, or property; it includes all the forms and acts essential to its application and to give effect to it. The means that may be employed to accomplish the purpose of the law is the process; in other words, 'proccess' is the mode by which the purpose of the law may be effected. The protection extends to rights, in the broadest sense of the term. *In determining whether the requirement has been observed, regard must be had rather to substance than to form; for the mere form of the proceeding cannot convert the process used into due process of law, if the necessary result is illegally to deprive a person of his property without compensation:*" 6 Ruling Case Law, § 433, page 436.

The requirements of due process of law extend to every case of the exercise of governmental power, and a state may not by any of its agencies— legislative, judicial or executive—disregard the constitutional prohibition: Abbott v. Tacoma Bank of Commerce, 175 U. S. 409.

"The essential elements of due process of law are notice, and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. In fact, one of the most famous and perhaps the most often quoted definition of due process of law is that of Daniel Webster in his argument in the Dartmouth College case, in which he declared that by due process of law was meant 'a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial.' Somewhat similar is the statement that it is a rule as old as the law that no one shall be personally bound until he has had his day in court, by which is meant, until he has been duly cited to appear, and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and can never be upheld where justice is fairly administered:" 6 Ruling Case Law, § 442, page 446.

Common experience and the admitted human tendency to err show clearly that there may be things other than the regularity of the proceedings of the treasurer which would vitally affect the title of the taxpayer under the act, and which, if not heard and determined, would cause him to be deprived of

224

his property. Double assessments, moneys paid without proper credit having been given therefor, other errors in the duplicate or other records, or other causes, while vitally essential to the taxable and his right to retain his property, would not be reviewable under the section of the act now under consideration. Nor can it be said that the taxable has had, anywhere through the several steps leading up to the sale, the right to have such claims legally determined. The act in question does not provide such earlier opportunity, nor does any other legislation appear to afford such a remedy. The duplicates are prepared by the proper authorities—the taxable has nothing to do with or right to correct any error which may be made therein. The duplicate is placed with the collector, with a warrant requiring him to collect the several amounts shown thereby from the several parties named therein, and to pay over the same, plus penalties, to the proper parties, less allowable discounts, commissions and expenses, and such exonerations as the taxing authorities may see fit to allow. If an error occurs in the duplicate of any sort, the taxable may call the attention of the collector or of the taxing authorities to the same and they *may* correct such error, but if they arbitrarily refuse, the taxable has no opportunity to have the matter legally determined. Under the act, if the disputed item remains unpaid upon the duplicate upon the first Monday of May, in the year following the year in which such alleged taxes were assessed and levied, the collector *must* return the same to the commissioners. These officials *may* consider the claim of the taxable and correct it or they may arbitrarily refuse it and, again, the taxable is without opportunity to have the matter legally determined. The commissioners *must* certify the same to the treasurer, where again, if those officials reject the claim, the taxable again is without opportunity to be properly heard. The treasurer *must* advertise and sell. The notice to the taxable of the sale affords no relief to him from the alleged error, as it is a notice of sale alone. And, finally, when the treasurer has sold and makes his return of sale, under the provisions of section 9 of the act under consideration, the taxable has no right to be heard, for the section restricts such objections or exceptions to matters pertaining to the regularity of the proceedings alone. Thus, nowhere has the taxable had an opportunity to be heard.

We grant that while it is the general rule that every one is entitled to a hearing as an essential part of due process of law, a statute is not unconstitutional merely because it authorizes a ministerial act by which possession of property is taken before the right to it has been judicially determined, as in attachment and replevin proceedings, but an opportunity to be heard must be given before final judgment is entered, as *is* done in attachment and replevin. The legislature can say *when* such a hearing is to be had, but it cannot *eliminate* such a hearing entirely without grossly infringing on the taxable's constitutional right under the 14th Amendment. Nor does the fact that the taxable is given a right to redeem, under section 13, cure this defect, as (1) such right does not amount to a hearing of the taxable's claim and (2) is a right accruing after, and not before the final judgment provided for in section 9.

"It has been judicially stated that it is beyond the power of the legislature to restrain a defendant in any suit from setting up a defense to an action against him and that due process of law not only requires that a party shall be properly brought into court, but that he shall have the opportunity, when in court, to establish any fact, which according to the usages of common law or provisions of the constitution, would be a protection to his property or his liberty. Due process of law clearly implies the right of the person affected thereby to be present before the tribunal which pronounces judgment concern-

ing his life, liberty or property, to be heard by testimony or otherwise, and to have the right of controverting by proof *every material fact* which bears upon the question or right in the matter involved:" 6 Ruling Case Law, § 449, p. 453.

How, then, can the legislature, having failed to provide any opportunity for the taxable to be heard preliminarily as to every material fact which would tend to establish in him a right to retain his property, arbitrarily refuse him such right at the threshold of the entry of final judgment. This is certainly what is done when the act refuses him the right to object or except to anything other than the regularity of the proceedings of the treasurer. The taxable here is in the same status as a defendant in a regularly established suit. The Commonwealth is the plaintiff and is accorded every opportunity to assert its claim against the taxable. The taxable may be said to have been properly brought into court by the notice of sale, prescribed by section 4 of the act, but he has been deprived of that hearing required by the Constitution, where his lips are sealed as to many possible material facts by the prohibition that he shall object or except to nothing but the regularity of the proceedings of the treasurer. This makes it a law which condemns but does not hear; which renders judgment without trial and which does not proceed upon inquiry. We, therefore, assent to the contentions of the plaintiff and conclude that section 9 of the Act of May 9, 1929, P. L. 1684, infringes upon the provisions of the 14th Amendment to the Constitution of the United States, and cannot be enforced by reason of such infringement.

Consideration of plaintiff's third point is unnecessary for the purposes of the bill.

And now, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. That the rule heretofore issued herein upon the defendant to show cause why an injunction should not issue restraining the sale advertised to be held on Aug. 4, 1930, or the adjournment thereof, be and the same is hereby made absolute.

2. That counsel for plaintiff forthwith prepare, in compliance with Equity Rule No. 73, a proper decree in conformity with this opinion.